United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 12, 2005**

Charles R. Fulbruge III
Clerk

REVISED MARCH 17, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-30184

_____

In The Matter of:  ROBERT BURKE KEATY, SR; ERIN KENNY KEATY
                   Debtors

_____

ROY A RASPANTI

                   Appellant

v.

ROBERT BURKE KEATY, SR

                   Appellee

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before KING, Chief Judge, and HIGGINBOTHAM and DAVIS, Circuit
Judges.

KING, Chief Judge:

This appeal arises from the bankruptcy court's refusal to give preclusive effect to findings made by the Louisiana Fourth Circuit Court of Appeal.  Appellant Roy A. Raspanti brought an adversary proceeding against Appellee Robert Burke Keaty, Sr. in bankruptcy court seeking a determination that a state court judgment against Keaty was not dischargeable under § 523(a)(6) of the Bankruptcy Code.  Raspanti asked the bankruptcy court to apply principles of collateral estoppel to the Louisiana

appellate court's findings on the issue of whether the debt arose from a willful and malicious injury as required under § 523(a)(6) of the Bankruptcy Code. The bankruptcy court did not give preclusive effect to the state appellate court's findings, reasoning that the issue had not been "actually litigated" at the state court level. Instead, the bankruptcy court held a trial to determine if the debt owed by Keaty was for a willful and malicious injury. After that trial, the bankruptcy court concluded that the debt owed to Raspanti was not for a willful and malicious injury, and the court thus held that the debt was dischargeable. The district court affirmed. We conclude that the bankruptcy court erred in not giving preclusive effect to the state appellate court's findings. We therefore REVERSE the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1985, Connie Byrd employed Robert Burke Keaty, Sr., Thomas S. Keaty, and Keaty & Keaty (collectively "the Keatys") to represent her son, Gregory Byrd, as a plaintiff in a Louisiana state court lawsuit. In that suit, the Byrds sued two defendants for injuries that Gregory sustained at school. In 1987, one of the defendants settled with the Byrds. Following a fee dispute, the Byrds and the Keatys executed a compromise agreement by which the Keatys received $586,200 in fees and costs. The Keatys continued to represent the Byrds at trial against the other

2

defendant, the school board, in the 26th Judicial District Court for the Parish of Bossier (the "Bossier Parish proceeding"). In January 1988, the trial court ruled in favor of the school board, and the Keatys subsequently filed a notice of appeal on behalf of the Byrds. Immediately thereafter, however, the Byrds discharged the Keatys, and in March 1988, Roy A. Raspanti was substituted as counsel.

Raspanti represented the Byrds in their appeal against the school board. While the appeal was pending, the Keatys filed an intervention in the suit seeking additional attorney's fees should the appeal against the school board be successful. The appellate court ultimately reversed the judgment in favor of the school board and remanded the case. The school board subsequently agreed to settle the claim, and Raspanti was paid $588,750 in attorney's fees. Meanwhile, the trial court dismissed on summary judgment the Keatys' claim for additional fees, reasoning that the compromise agreement executed between the Byrds and the Keatys settled all of their fee disputes. The Keatys appealed the judgment, but the Louisiana Second Circuit Court of Appeal dismissed the appeal as untimely.

In November 1991, the Keatys sued Raspanti in the Civil District Court for the Parish of Orleans, alleging tortious interference of contract and unjust enrichment and seeking a portion of the attorney's fees collected by Raspanti. In February 1992, the Keatys filed a second suit against Raspanti

3

seeking an apportionment of the attorney's fees on a quantum meruit basis.  The two suits were consolidated.  In response, Raspanti filed exceptions of prescription, no cause of action, and res judicata, as well as a motion for summary judgment and a motion for sanctions.  All of these exceptions and motions were denied.  Raspanti then requested several admissions from the Keatys: first, that there was no contract between Raspanti and Robert B. Keaty, Thomas S. Keaty and/or Keaty and Keaty, and second, that there had never been a contract between any of those parties.  Keaty v. Raspanti, 781 So.2d 607, 609 (La. Ct. App. 2001).  The Keatys denied Raspanti's request for admissions and responded that their claims "encompass[ed] contractual claims and a claim for apportionment of attorney's fees."  Id.  However, the Keatys later admitted, in a written opposition to a motion for summary judgment filed by Raspanti, that they had no contract with Raspanti.  Id.  In light of this, Raspanti reurged his motion for summary judgment, making the additional argument that because the Keatys already had been denied additional fees from the Byrds by the state court in Bossier Parish, they could not recover additional fees from him.  In support, Raspanti pointed to prior admissions made by the Keatys that the source of their claim was the contract with the Byrds and that they had no contract with Raspanti.

On August 13, 1996, the trial court rendered summary judgment in favor of Raspanti.  Keaty v. Raspanti, 695 So.2d 1085

4

(La. Ct. App. 1997).  On May 28, 1997, the Louisiana Fourth Circuit Court of Appeal affirmed.  See id.  The appellate court reasoned that the Bossier Parish proceeding had resulted in a final judgment that the Keatys could not recover additional fees from the Byrds because the compromise agreement encompassed claims for both past and future fees.  Id. at 1087.  Thus, the court concluded that since the Keatys' claim was based on their contract with the Byrds, the Keatys were precluded from seeking additional fees from Raspanti.  Id.  The court also made the observation that the Keatys had acknowledged that their tortious interference claim was prescribed.  Id.

On June 27, 1997, Raspanti filed a motion for sanctions against the Keatys on the basis that the Keatys' tortious interference claim was frivolous.  In response, the Keatys filed exceptions of prescription and res judicata.  The trial court granted the Keatys' exceptions without written reasons, and Raspanti appealed to the Louisiana Fourth Circuit Court of Appeal.

On February 7, 2001, the appellate court reversed the decision of the trial court and held that the Keatys' exceptions of res judicata and prescription had no merit.  The court then went on to assess Raspanti's sanctions claim de novo.  The court referred to its 1997 decision and noted that Keaty had no claim for attorney's fees against Raspanti.  The Louisiana appellate court then made particular findings regarding the Keatys' claims.

5

Specifically, the court found that the Keatys knew their claims had prescribed, that their answers to Raspanti's request for admissions were disingenuous, and that the proceedings by the Keatys were knowingly without foundation, crafted for the purposes of harassment, and designed to prolong the proceedings deliberately and needlessly. Id. at 612. Accordingly, the appellate court concluded that the Keatys' conduct was sanctionable under Louisiana law[1] and remanded the case for an evidentiary hearing to set the amount of sanctions to be awarded. The state trial court awarded Raspanti $34,605.08, which the appellate court increased to $107,605.95 on appeal. Keaty v. Raspanti, 866 So.2d 1045 (La. Ct. App. 2004).

---

[1] The Keatys were sanctioned under the Louisiana Code of Civil Procedure. The relevant statute states in pertinent part:

Art. 863. Signing of pleadings, effect

A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name . . . .

B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

LA. CODE CIV. PROC. ANN. art. 863 (West 1984).

6

Meanwhile, on December 9, 1999, before the Louisiana appellate court's reversal, Robert Burke Keaty, Sr. ("Keaty") and Erin Kenny Keaty filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Louisiana. On April 6, 2001, Keaty added Raspanti as a creditor. Thereafter, on June 14, 2001, Raspanti filed a complaint to determine the dischargeability of his debt pursuant to 11 U.S.C. § 523(a)(6).[2] Specifically, Raspanti contended that Keaty's debt (i.e., the sanctions assessed by the Louisiana Fourth Circuit Court of Appeal) should not be discharged under § 523(a)(6) because it was a debt for a willful and malicious injury (i.e., bringing a frivolous lawsuit against Raspanti).

On October 1, 2001, Raspanti filed a motion for summary judgment, arguing that the findings of the Louisiana Fourth Circuit Court of Appeal amounted to a finding that the debt owed by Keaty to Raspanti resulted from a willful and malicious injury, and thus, under the doctrine of issue preclusion, Keaty was barred from relitigating the issue. The bankruptcy court denied Raspanti's motion on March 19, 2002. The court reasoned that the issue of willful and malicious injury was not "actually litigated" as required under issue preclusion because "neither the [Louisiana] trial court nor the appellate court ever

---

[2]     This action was brought only against Keaty.

7

conducted an actual evidentiary hearing regarding [Keaty's] conduct." On April 16, 2002, Raspanti filed a second motion for summary judgment and attached a copy of the entire state court record. On July 30, 2002, the bankruptcy court again denied Raspanti's motion. The court again reasoned that the sanctions issue had not been "actually litigated" so as to support a finding of willful and malicious injury under § 523(a)(6) because the sanctions issue was decided "without the introduction of exhibits, testimony or any other evidence" and "without any hearing."

Thereafter, the bankruptcy court held a trial on Raspanti's complaint on November 4, 2002. At trial, Raspanti relied solely on the state court record. On August 26, 2003, the bankruptcy court issued an order dismissing Raspanti's complaint with prejudice. In its Reasons for Decision, the bankruptcy court held that Raspanti failed to satisfy his burden of proving each element of § 523(a)(6) because he presented no evidence that went to Keaty's intent or subjective motivation. The bankruptcy court specifically rejected Raspanti's argument, which Raspanti had also put forth in his motions for summary judgment, that the state appellate court's findings clearly established all the elements of § 523(a)(6) and that, pursuant to the doctrine of issue preclusion, judgment should be entered in his favor. In rejecting Raspanti's argument, the bankruptcy court restated the reasoning it articulated when it ruled on Raspanti's motion:

8

"issue preclusion require[s] that an issue be 'actually litigated' in the first instance in order for issue preclusion to apply in the second case.  Finding that there was never a trial on the issue of sanctions, [this] court concluded that issue preclusion did not apply."  Raspanti v. Keaty (In re Keaty), No. 99-52587 (Bankr. W.D. La. 2003).  Accordingly, the bankruptcy court refused to give preclusive effect to the state appellate court's findings to conclude that Raspanti had met his burden of proving the elements of § 523(a)(6) because "the appellate court entered sanctions without a trial or evidentiary hearing whatsoever."  Id.

Raspanti appealed the bankruptcy court's decision to the United States District Court for the Western District of Louisiana.  The district court adopted the findings of the bankruptcy court and dismissed Raspanti's appeal.  Raspanti now appeals to this court, arguing that the district court erred in affirming the bankruptcy court's decision.  The issue before us is whether, under principles of collateral estoppel, the sanctions issue was "actually litigated" in the state court such that the Louisiana appellate court's findings barred the relitigation of the willful and malicious injury requirement of § 523(a)(6).

## II. DISCUSSION

## A.    Standard of Review

This court reviews a bankruptcy court's conclusions of law de novo.  Killebrew v. Brewer (In re Killebrew), 888 F.2d 1516, 1519 (5th Cir. 1989).  "A bankruptcy court's decision to give preclusive effect to a state court judgment is a question of law that we review de novo."  Gober v. Terra + Corp. (In re Gober), 100 F.3d 1195, 1201 (5th Cir. 1996); accord Schwager v. Fallas (In re Schwager), 121 F.3d 177, 181 (5th Cir. 1997).

**B.   Analysis**

Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt incurred for willful and malicious injury by the debtor to another entity.  11 U.S.C. § 523(a)(6) (2004).  Section 523(a)(6) of the Bankruptcy Code specifically provides:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . .

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

Id.  The Supreme Court, in Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998), stated that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  The Fifth Circuit extended Kawaauhau's reasoning in Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598, 603 (5th Cir. 1998), and stated that

10

"either objective substantial certainty [of injury] or subjective motive [to injure] meets the Supreme Court's definition of 'willful . . . injury' in § 523(a)(6)." (third alteration in original). The court in Miller went on to define the word "malicious" and specifically rejected that it meant an act without just cause or excuse. Id. at 605. Instead, the court defined "malicious" as an act done with the actual intent to cause injury. Id. at 606. The court noted that this definition is synonymous with the definition of "willful" and thus aggregated "willful and malicious" into a unitary concept. Thus, the court held that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." Id. at 606; see also Williams v. IBEW Local 520 (In re Williams), 337 F.3d 504, 509 (5th Cir. 2003).

To prevail under § 523(a)(6), a creditor must prove by a preponderance of the evidence that the debt is not dischargeable. Grogan v. Garner, 498 U.S. 279, 291 (1991). The Supreme Court has held that collateral estoppel (issue preclusion) principles apply in bankruptcy dischargeability proceedings. Id. at 285. Accordingly, "[i]n such proceedings, '[p]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability . . . .'" Schwager, 121 F.3d at 181 (second alteration in original) (quoting Gober, 100 F.3d at 1201). Thus, collateral estoppel can provide an

11

alternative basis to satisfy the elements of § 523(a)(6).

When giving preclusive effect to a state court judgment, this court must apply the issue preclusion rules of that state. Miller, 156 F.3d at 598 (citing Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996)); In re King, 103 F.3d 17, 19 n.2 (5th Cir. 1997); Gober, 100 F.3d at 1201. Here, because the underlying judgment is from the Louisiana Fourth Circuit Court of Appeal, Louisiana issue preclusion rules apply. Louisiana law provides in pertinent part:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent . . .
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

LA. REV. STAT. ANN. § 4231 (West 1991).

The requirements for issue preclusion under Louisiana state law are identical to those recognized by the Fifth Circuit: (1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment. Charpentier v. BG Wire Rope & Slings, Inc., 174 B.R. 438, 441 n.1 (E.D. La. 1994); see also Matter of Whittaker, 225 B.R. 131 (Bank. E.D. La. 1998). Moreover, this

12

circuit has held that because § 4231 is modeled on federal doctrine and the RESTATEMENT OF JUDGMENTS, we can consult federal jurisprudence for guidance when interpreting it.  See Lafreniere Park Found. v. Broussard, 221 F.3d 804, 808 (5th Cir. 2000); see generally Goodman v. Spillers, 686 So.2d 160, 166 (La. Ct. App. 1996) (citing 3 JAMES W. MOORE ET AL., MOORE'S MANUAL, FEDERAL PRACTICE AND PROCEDURE, §§ 30.04, 30.05 (1996) and RESTATEMENT (SECOND) OF JUDGMENTS, § 27, cmt. (d) (1980)).

In addition, the scope of collateral estoppel is circumscribed by the particularized findings of the state court. Miller, 156 F.3d at 602.  Thus, "[c]ollateral estoppel applies in bankruptcy courts only if, inter alia, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question--that is, an issue which encompasses the same prima facie elements as the bankruptcy issue--and the facts supporting the court's findings are discernible from that court's record." Dennis v. Dennis (In re Dennis), 25 F.3d 274, 278 (5th Cir. 1994).  Therefore, the state court's findings must satisfy the elements of the "willful and malicious injury" requirement.

In the case at hand, the bankruptcy court refused to give preclusive effect to the state appellate court's findings because it concluded the sanctions issue (whether Keaty had filed the claim against Raspanti to harass or to cause unnecessary delay or needless increase in the cost of litigation) had not been

13

"actually litigated" in the state court.  Specifically, the bankruptcy court stated that the sanctions issue had not been "actually litigated" because there had never been a trial or an evidentiary hearing on the issue.  We disagree with the bankruptcy court's legal premise.

There is nothing in the case law defining the term "actually litigated" to require a trial or evidentiary hearing.  Notably, the bankruptcy court failed to cite any law to the contrary.  Louisiana law does not mandate that an issue must be decided after a trial or evidentiary hearing to be considered "actually litigated."  Such a requirement is clearly absent from the Louisiana statute setting forth the requirements of issue preclusion.  See LA. REV. STAT. ANN. § 4231 (West 1991).  Likewise, at the federal level, there is no requirement of a trial or evidentiary hearing to conclude that an issue has been "actually litigated."  See RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (1982) (stating that an issue is actually litigated when "an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined," but not requiring a trial or evidentiary hearing); 18 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 132.03 (3d ed. 1999) (failing to state that a trial or evidentiary hearing is a requirement for issue preclusion).

In fact, courts regularly apply the doctrine of issue preclusion in instances when there has not been a trial or evidentiary hearing in the first case.  See, e.g., Hirschfeld v.

Spanakos, 104 F.3d 16 (2d Cir. 1997). In Hirschfeld, the Second Circuit reversed the district court's refusal to give preclusive effect to an appellate court's findings, holding that even though "the process by which appellate courts impose sanctions is a summary process in which no testimony is taken and no cross-examination permitted[,] it is not dispositive of the preclusion issue . . . ." Id. at 19. Courts also apply the doctrine of issue preclusion to issues decided on summary judgment--which itself does not require a trial or evidentiary hearing. See RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (stating that an issue is actually litigated when it is, inter alia, "submitted for determination, and is determined" and that "[a]n issue may be submitted and determined on . . . a motion for summary judgment"); 18 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 132.03 ("Issue preclusion generally applies when the prior determination is based on a motion for summary judgment."). Thus, the bankruptcy court erred in concluding that the "actually litigated" requirement of issue preclusion required a trial or evidentiary hearing.

The requirement that an issue be "actually litigated" for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined. McLaughlin v. Bradlee, 803 F.2d 1197, 1201 (D.C. Cir. 1986) ("This court has recently recapitulated the standards for establishing the preclusive effect of a prior

15

holding. First, the same issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court." (internal quotation marks omitted)); <u>James Talcott, Inc. v. Allahabad Bank, Ltd.</u>, 444 F.2d 451, 459-60 (5th Cir. 1971) ("As a general rule, where a question of fact is put in issue by the pleadings, and is submitted to the jury or other trier of facts for its determination, and is determined, that question of fact has been 'actually litigated.'" (citing RESTATEMENT OF JUDGMENTS § 68, cmt. c (1942))); RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. d (1982) (stating that an issue is actually litigated when it is "properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined").

There is no question that the sanctions issue was actually litigated in the state court. First, Raspanti clearly raised the sanctions issue in his motion for sanctions under Article 863. Second, Keaty contested Raspanti's assertion that Keaty filed the claim for attorney's fees against Raspanti to harass or to cause unnecessary delay or needless increase in the cost of litigation in several pleading documents, including his Memorandum in Support of Exceptions of Res Judicata and Prescription and in Opposition to Sanctions Under Louisiana Code of Civil Procedure Article 863.[3] In addition, Keaty's attorney argued the sanctions

_____

[3] In his memorandum, Keaty stated in pertinent part:

16

issue twice before the Louisiana Fourth Circuit Court of Appeal; first before a three-judge panel and then before a five-judge panel.  Third, the sanctions issue was submitted for determination by the state trial and appellate courts.  Finally, the state appellate court ruled expressly on, and thus determined, the sanctions issue.  The appellate court made the express finding that "the entire proceedings by the Keatys against Raspanti was knowingly without foundation, crafted for purposes of harassment and carried out in a manner designed to deliberately prolong the proceedings needlessly."  Keaty v. Raspanti, 781 So.2d 607, 612 (La. Ct. App. 2001).  Therefore, we conclude that the sanctions issue--the issue of whether Keaty filed the claim against Raspanti to harass or to cause unnecessary delay or needless increase in the cost of litigation--was actually litigated in the Louisiana Fourth Circuit Court of Appeal.  The state court record that Raspanti submitted to the

> Roy A. Raspanti was made defendant in a lawsuit wherein the plaintiffs sought at least a portion of attorneys fees realized as the result of their services, knowledge and skill. . . .  Thus, the Keatys claimed entitlement to, at least, a portion of the attorneys fees realized as the result of their efforts, services and skill.  The petition was not frivolous, erroneous or clearly wrong.  In good faith, the Keatys asserted that Roy A. Raspanti was not entitled to the total sum of attorneys fees he had in his possession.  The record simply does not support the allegation that the pleadings were not founded in fact and not asserted in good faith.

This statement clearly shows that Keaty disputed the fact that he filed the claim against Raspanti to harass or to cause unnecessary delay or needless increase in the cost of litigation.

17

bankruptcy court fully supports our conclusion that the bankruptcy court erred in finding that the sanctions issue was not actually litigated at the state court level.[4]

Our conclusion that the elements of collateral estoppel have been met, however, is not the end of our inquiry.  We must next determine whether the state appellate court "has made specific, subordinate, factual findings on the identical dischargeability issue in question--that is, an issue which encompasses the same prima facie elements as the bankruptcy issue . . . ."  Dennis, 25 F.3d at 278.  In other words, we must ascertain whether a claim for sanctions under Louisiana law encompasses the elements of the willful and malicious injury requirement under § 523(a)(6) of the Bankruptcy Code and whether the state appellate court's findings satisfy the elements of the "willful and malicious injury" requirement.  As stated above, this circuit has held that "an injury is 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to

---

[4]     Moreover, the bankruptcy court did not question that all the other elements of collateral estoppel were met.  First, both Raspanti and Keaty were parties in the state court action.  Second, as discussed below, the issue to be precluded (the issue of whether Keaty acted willfully and maliciously) is encompassed by the issue of sanctions (whether Keaty filed the claim for attorney's fees against Raspanti to harass or to cause unnecessary delay or needless increase in the cost of litigation).  Third, the determination of the issue of whether Keaty filed the claim against Raspanti to harass or to cause unnecessary delay or needless increase in the cost of litigation in the state appellate court was necessary to the judgment imposing sanctions under the Louisiana Code of Civil Procedure Article 863.

18

cause harm." Miller, 156 F.3d at 606. Article 863 of the Louisiana Code of Civil Procedure allows sanctions against an attorney who signs a pleading with "any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Both § 523(a)(6) and the Louisiana statute require an inquiry into whether Keaty acted either with an objective substantial certainty of injury (to cause unnecessary delay) or a subjective motive to cause injury (to harass or to increase the cost of litigation needlessly). In fact, the Louisiana appellate court issued sanctions against Keaty for intentionally pursuing meritless litigation for the purpose of harassment and delay. Thus, we conclude that Raspanti's claim for sanctions under Louisiana law encompasses the elements of the willful and malicious injury requirement under § 523(a)(6) of the Bankruptcy Code.

We further conclude that the Louisiana Fourth Circuit Court of Appeal's findings unquestionably satisfy the elements of § 523(a)(6). The Louisiana appellate court made the following findings:

> We find that the Keatys knew and must have known all along that their claim for tortious interference had prescribed. We find that the Keatys knew that all of their claims against the Byrds were disposed of in the Bossier Parish proceedings. . . . We find that the Keatys' answers to Raspanti's request for admissions, in which they denied the non-existence of a contract between them and Raspanti, was disingenuous. We find that the entire proceedings by the Keatys against Raspanti was knowingly without foundation, crafted for purposes of harassment and carried out in a manner

19

designed to <u>deliberately</u> prolong the proceedings needlessly.

<u>Keaty</u>, 781 So.2d at 612 (emphasis added).  These are clear and specific findings as to Keaty's state of mind.  They demonstrate that Keaty's motive in filing the frivolous claim for attorney's fees was to injure Raspanti (by harassing him).  They also demonstrate that Keaty's actions were substantially certain to injure Raspanti, since deliberately and needlessly prolonging the proceedings would necessarily cause Raspanti financial injury.  Thus, we conclude that the state appellate court's findings satisfy the elements of § 523(a)(6).[5]  Specifically, the findings evidence that Keaty acted willfully and maliciously to injure Raspanti.  Therefore, we conclude that the bankruptcy court erred in refusing to give preclusive effect to the findings made by the Louisiana Fourth Circuit Court of Appeal.

### IV. Conclusion

Accordingly, we hold that the district court erred in affirming the bankruptcy court's decision to deny preclusive

---

[5]     The bankruptcy court's holding does not dispute that the Louisiana Fourth Circuit Court of Appeal's findings satisfy the elements of § 523(a)(6).  The bankruptcy court held that Raspanti failed to satisfy his burden of proving each element of § 523(a)(6) because he presented no evidence that went to Keaty's intent or subjective motivation.  The bankruptcy court's rationale for its holding, however, rested on its conclusion that the sanctions issue was not "actually litigated" and not on a finding that the sanctions issue did not encompass the same elements as the willful and malicious issue or that the state appellate court's findings did not satisfy the elements of the "willful and malicious injury" requirement.

20

effect to the Louisiana appellate court's findings.  REVERSED and REMANDED.