# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2010

No. 09-41084
Summary Calendar

Lyle W. Cayce
Clerk

In the Matter of: MARCO A. CANTU,

Debtor

-------------------------------------------------------------------------

GUERRA & MOORE LTD, LLP,

Appellant

v.

MARCO A. CANTU,

Appellee

Appeal from the United States District Court
for the Southern District of Texas
U.S.D.C. 7:08-CV-379

Before KING, DAVIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Guerra & Moore, LTD, LLP, appeals the district court's judgment, which

affirmed the bankruptcy court's judgment permitting the discharge of Guerra &

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-41084

Moore's state court judgment against Marco A. Cantu. Guerra & Moore argues that the state court's judgment—that Cantu tortiously interfered with its contract—establishes a "willful and malicious injury" that, under 11 U.S.C. § 523(a)(6), bars discharge of the judgment in Cantu's bankruptcy. For the following reasons, we AFFIRM.

## I. BACKGROUND

In May 2007, Guerra & Moore, LTD, LLP, a law firm, filed a lawsuit against Marco A. Cantu, a rival lawyer, in Texas state court. Guerra & Moore alleged that Cantu had, *inter alia*, tortiously interfered with both a contract and a prospective contract that Guerra & Moore had with clients. *See Cantu v. Guerra & Moore, LLP*, — S.W.3d —, —, 2009 WL 3460321 at \*\*1–2 (Tex. App.—San Antonio 2009, no pet.). Following trial, the jury made findings in favor of Guerra & Moore and awarded $1.6 million in actual damages. *Id.* at \*2. Specifically, the jury found that: (1) "Mark Cantu intentionally interfere[d] with Guerra & Moore[']s contract with [a client]"; (2) "Mark Cantu intentionally interfere[d] with the reasonable probability that Guerra & Moore . . . would have entered into a contractual relationship with [a client], by committing an unlawful act that was a substantial factor in preventing the relationship from occurring"; and (3) an award of $1.6 million would "fairly and reasonably compensate Guerra & Moore . . . for its damages . . . proximately caused by [Cantu's] intereference." *See id.* However, the jury did not answer whether it "f[ou]nd by clear and convincing evidence that the harm to Guerra & Moore . . . resulted from malice," where malice was defined to mean "a specific intent by [ ] Cantu to cause substantial injury to Guerra & Moore." *See id.*

Before the state court could enter judgment, Cantu filed a Chapter 11 bankruptcy petition on May 6, 2008, in the Bankruptcy Court for the Southern District of Texas. The bankruptcy court granted relief from the automatic stay to enable the state court to enter judgment in favor of Guerra & Moore, which

No. 09-41084

the state court did on August 4, 2008. The same day, Guerra & Moore initiated an adversary proceeding in the bankruptcy court, contending that the state court judgment was excepted from discharge under 11 U.S.C. § 523(a)(6)[1] because it established a "willful and malicious injury." Guerra & Moore moved for summary judgment, arguing that the jury's finding of intentional interference with its contract was sufficient to establish an exception to discharge under § 523(a)(6) and that collateral estoppel prevented Cantu from relitigating the jury's findings.

In a thoughtful opinion, the bankruptcy court considered Guerra & Moore's arguments and denied summary judgment, concluding that the state court judgment did not, by itself, establish a "willful and malicious injury." Following this ruling, Guerra & Moore stipulated that it would submit no further evidence of "willful and malicious injury" beyond the state court judgment, and, given this stipulation, the bankruptcy court entered final judgment in favor of Cantu. Guerra & Moore appealed to the District Court for the Southern District of Texas, which (also in a thoughtful opinion) similarly considered and rejected its contentions, entering final judgment in favor of Cantu. Guerra & Moore now appeals.

## II.  LEGAL STANDARDS

"We apply the same standard of review as the district court, reviewing the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*."

---

[1] Section 523 provides, in relevant part:
(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

3

*Laughlin v. Nouveau Body & Tan, LLC* (*In re Laughlin*), 602 F.3d 417, 421 (5th Cir. 2010) (quotation marks omitted). "The debtor's entitlement to a discharge must be determined by federal, not state, law." *Id.* (quotation marks omitted). "The exceptions [to discharge] are construed strictly against the creditor and liberally in favor of the debtor." *Id.* (quotation marks omitted). "We . . . review *de novo* a court's decision to give full faith and credit to a state court judgment." *Miller v. J.D. Abrams Inc.* (*In re Miller*), 156 F.3d 598, 601 (5th Cir. 1998) (quotation marks omitted); *accord Raspanti v. Keaty* (*In re Keaty*), 397 F.3d 264, 269 (5th Cir. 2005) ("A bankruptcy court's decision to give preclusive effect to a state court judgment is [reviewed] de novo.").

## III. DISCUSSION

The parties disagree as to whether the state court judgment conclusively establishes the requisite elements to except discharge under § 523(a)(6). Specifically, Guerra & Moore argues that "[t]he injury in this case is the interference with the contract, not the money damages awarded to compensate for same" and that this "injury," found by the jury to be intentional, "establishes that [Cantu]'s conduct was willful and malicious."[2]  We disagree.

### A. Willful and Malicious Injury

"Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt incurred for willful and malicious injury by the debtor to another entity." *Keaty*, 397 F.3d at 269. We have "aggregated 'willful and malicious' into a unitary concept" and held that "'an injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm.'" *Id.* at 270 (quoting *Miller*, 156 F.3d at 606); *accord Williams v. IBEW Local 520*

---

[2] Guerra & Moore focuses its arguments on the state court's finding of tortious interference with its contract and not on the judgment for tortious interference with its prospective relationship, though it contends that the analysis is similar. We similarly focus our analysis on the tortious interference with a contract judgment and use "interference with contract" to refer to both actions, except as noted or made apparent from context.

(*In re Williams*), 337 F.3d 504, 509 (5th Cir. 2003) (discussing these standards). "To prevail under § 523(a)(6), a creditor must prove by a preponderance of the evidence that the debt is not dischargeable." *Keaty*, 397 F.3d at 270.

"[P]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability [and] collateral estoppel can provide an alternate basis to satisfy the elements of § 523(a)(6)." *Id.* (quotation marks and alterations omitted). Here, because the judgment was rendered by a Texas state court, we apply Texas rules of issue preclusion. *See Miller*, 156 F.3d at 601. "Under Texas law, collateral estoppel bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action." *Id.* (quotation marks omitted).

We first note that the fact that "tortious interference with contract" is an intentional tort is not dispositive of our § 523(a)(6) analysis. *See Williams*, 337 F.3d at 509 ("Despite similarities in the language used to describe an injury under Section 523(a)(6) and intentional torts, Section 523(a)(6) creates a narrower category of tortious conduct."). Indeed, we have noted that "[m]erely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful." *Miller*, 156 F.3d at 604. Illustrating this distinction, we recognized in *Miller* that, under Texas law, "misappropriation of proprietary information and misuse of trade secrets [we]re wrongful [acts] regardless of whether injury is substantially certain to occur." *Id.* However, we declined to find that the wrongfulness of those intentional acts itself established the "injury" required by § 523(a)(6). *See id.* ("Misuse of trade secrets is not precisely like stealing funds from a till, because the tortfeasor's gain is not inevitably a loss to the legal owner of the secret."). We have similarly declined to find the requisite "injury" on the sole basis of a tortious act in other contexts, instead asking whether there was either an objective substantial certainty of harm or a

5

subjective motive to cause harm that established a "willful and malicious injury." *See Texas v. Walker*, 142 F.3d 813, 823–24 (5th Cir. 1998) (negligence, breach of contract, and conversion torts do not necessarily involve an intentional injury); *accord Keaty*, 397 F.3d at 274 (looking to the state court's specific findings to determine whether debtor's "motive in filing [a] frivolous claim was to injure [the creditor]" in determining whether a court-ordered sanction was dischargeable); *see also Rain Bird Corp. v. Milton* (*In re Milton*), 355 B.R. 575, 581–82 (Bankr. N.D. Miss. 2006) (relying on findings that debtor's actions were "willful, intentional, and malicious" *and* "calculated to cause damage to [creditor's] business" when assessing whether tortious interference with a contract under Mississippi law established a "willful and malicious injury").

We think that Cantu's tortious "interference" with Guerra & Moore's contract is not, by itself, a sufficient "injury" for purposes of the § 523(a)(6) analysis. Thus, though the jury found that Cantu intentionally interfered with Guerra & Moore's contract, that finding, standing alone, does not establish a "willful and malicious injury" so as to except the state court judgment from discharge. Instead, we must look to "the particularized findings of the jury," in order to determine whether Guerra & Moore has shown that Cantu's tortious interference with its contract entailed "either an objective substantial certainty of harm or a subjective motive to cause harm." *Miller*, 156 F.3d at 602.

### 1. Objective Substantial Certainty of Harm

We first consider whether Cantu's "acts were substantially certain to result in injury to [Guerra & Moore]." *See Miller*, 156 F.3d at 604. Under Texas law, "A party alleging tortious interference must prove four elements to sustain its claim: (1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred." *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997).

No. 09-41084

"Intentional interference does not require intent to injure, only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992) (quotation marks omitted). "Consequence," in this context, refers to the "interference," not necessarily the injury. *See id.* (noting that "jury did not find that [defendant] desired to *interfere* with [plaintiff's] contract or believed that *interference* was substantially certain to result from it" (emphasis added)).[3]

Here, the jury found that Cantu intentionally interfered with Guerra & Moore's contractual relations and that this interference "proximately caused" damages of $1.6 million. However, the jury's determination that the "willful and intentional act proximately caused [Guerra & Moore's] damages" does not establish that the "acts were substantially certain to result in injury to [Guerra & Moore]" for the purposes of the § 523(a)(6) analysis. *Miller*, 156 F.3d at 604 ("[The debtor's] conduct, however, could still be 'willful' under the objective standard, if his acts were substantially certain to result in injury to [the creditor]. The state court jury determined *only that injury was proximately caused* by [the debtor's] acts, a less demanding standard than 'substantial certainty.'" (emphasis added)). As such, Guerra & Moore, by failing to produce

---

[3] The elements of a claim for tortious interference with prospective contract are similar and do not require specific examination for the purposes of our inquiry here.

> The elements of a claim for tortious interference with prospective contract are: (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring, or it knew that the interference was certain or substantially certain to occur as a result of the defendant's conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference. "Independently tortious" means conduct that would violate some other recognized tort duty.

*Johnson v. Baylor Univ.*, 188 S.W.3d 296, 304 (Tex. App.—Waco 2006, pet. denied) (citations omitted).

evidence beyond the state court record of judgment, has not shown by a preponderance of the evidence that Cantu's conduct met the objective prong of the "willful and malicious injury" inquiry. *See id.* at 606 (remanding for factfindings to determine whether "[the debtor's] actions were at least substantially certain to result in injury to [the creditor]," despite the state jury's findings that the debtor's actions proximately caused injury to the creditor).

## 2. *Subjective Motive to Cause Harm*

Similarly, Guerra & Moore has not established "that [Cantu] had the subjective motive to cause harm." *Id.* at 606. The state court jury declined to answer whether Cantu acted with "malice," defined to mean "a specific intent by . . . Cantu to cause substantial injury to Guerra & Moore." As such, the state court judgment, by itself, does not establish that Guerra & Moore acted with the "subjective motive to cause harm." *Cf. id.* at 604 ("If the subjective standard alone were the standard, issue preclusion would give [the debtor] victory because the jury found that he did not act with 'malice.'"). Because Guerra & Moore stipulated that the record of the state court judgment was its sole evidence concerning "willful and malicious injury," we are compelled to conclude that Guerra & Moore has not "prove[n] by a preponderance of the evidence" that Cantu's conduct met the subjective standard. *See Walker*, 142 F.3d at 824 (remanding for a factfinding to determine whether debtor met the subjective standard when the state court judgment did not establish the fact).

## III. CONCLUSION

Accordingly, given that the record of the state court judgment established neither the "objective" nor the "subjective" prong of the "willful and malicious injury" inquiry, Guerra & Moore has not shown that its judgment against Cantu for tortious interference with contract should be excepted from discharge under § 523(a)(6). We AFFIRM the judgments of the bankruptcy and district courts.

AFFIRMED.