# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 20, 2025

Lyle W. Cayce
Clerk

No. 24-30273

In the Matter of Ross Shaun Adair,

*Debtor*,

Ross Shaun Adair,

*Appellant*,

*versus*

Stutsman Construction, L.L.C.,

*Appellee*.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:23-CV-625

_____

Before Higginbotham, Willett, and Ho, *Circuit Judges*.
James C. Ho, *Circuit Judge*:

Ross Shaun Adair contracted with Stutsman Construction to repair his home from flood damage. Adair claimed that the repairs were done poorly and refused to pay the final installment to Stutsman. Stutsman responded by obtaining a default judgment against Adair in Louisiana state court.

Adair subsequently filed for bankruptcy.  Stutsman sought to have its default judgment declared nondischargeable.  Adair argued that Stutsman's unclean hands barred this relief, citing various regulatory violations.  The bankruptcy court held that the Louisiana judgment precluded any unclean hands defense.

We disagree and accordingly vacate and remand the case to the bankruptcy court for consideration of Adair's unclean hands defense in the first instance.

## I.

In 2016, Adair's home experienced severe damage from widespread flooding in Baton Rouge.  He hired Stutsman, a Louisiana construction company licensed to perform home repairs up to $75,000.00.  Freedom Mortgage Company paid for the repairs in four installments—together exceeding $150,000.00.  The installment checks were sent to Adair with both Adair and Stutsman listed as payees.  Before each check was issued, an inspector from Freedom Mortgage visited the property and determined the project's completion percentage.  Adair endorsed the first three checks and gave them to Stutsman.

After a final inspection resulted in a 100% complete evaluation, Freedom Mortgage issued the final check for $71,755.48.  Adair testified that, before depositing the final check, he grew concerned about the quality and completeness of the work.  Stutsman's manager testified that he believed the project was "pretty much finalized," with only a "punch list" of minor repairs remaining.

Adair endorsed the final check and deposited it into his own account.  He testified that he wanted it within his control, because he felt that Stutsman's work was poor and incomplete.  Stutsman contacted Adair,

offered to remediate the issues he complained of, and drafted a proposal with options to resolve the dispute. Resolution was unsuccessful.

Stutsman then filed a complaint for damages in Louisiana state court. Adair did not appear at trial. A default judgment was rendered for Stutsman for the value of the final check, plus interest, fees, costs, and $5,000.00 in general damages.

Adair filed a complaint with the Louisiana State Licensing Board for Contractors, alleging that Stutsman engaged in unlawful home repair. An investigator informed Stutsman that it was "out of compliance" with its $75,000.00 license. Stutsman's manager countered that he thought completing the project in four phases would avoid any such violation. The investigator found that Stutsman performed work in the amount of $179,761.90 and recommended citations for operating without a license as well as violation of mold remediation regulations. Stutsman pled guilty to both violations.

Adair later filed for Chapter 13 bankruptcy. Stutsman filed a complaint seeking to except the Louisiana judgment from discharge under 11 U.S.C. § 523(a)(6). Adair sought to dismiss the complaint by arguing that Stutsman's "unclean hands" barred relief—namely, its lack of proper licensure, as well as Adair's claim of inadequate workmanship. The bankruptcy court declined to consider this defense, because it found the issue precluded by the Louisiana judgment.

Following a bench trial, the bankruptcy court held that Adair willfully and maliciously injured Stutsman by failing to pay him the final installment check and denied dischargeability of the Louisiana judgment. The district court affirmed both the preclusion of Adair's unclean hands defense and the merits of Stutsman's complaint.

No. 24-30273

Adair filed this appeal. We've repeatedly held that "[a] bankruptcy court's decision to give preclusive effect to a state court judgment is a question of law that we review de novo." *In re Keaty*, 397 F.3d 264, 269 (5th Cir. 2005) (citing cases).

## II.

Federal bankruptcy law generally prevents a debtor from discharging a debt incurred from his willful and malicious injury to another entity or its property. *See* 11 U.S.C. § 523(a)(6). In response, Adair counters that Stutsman's nondischargeability claim is barred by its unclean hands. The bankruptcy court rejected consideration of this defense, finding it precluded by the state litigation. We disagree with the bankruptcy court.

Issue preclusion principles apply in bankruptcy discharge proceedings under § 523(a). *See, e.g.*, *Grogan v. Garner*, 498 U.S. 279, 284–85 n.11 (1991) ("collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)"). When considering whether a state court judgment is preclusive, we apply the issue preclusion rules of that state. *Keaty*, 397 F.3d at 270. Under Louisiana law, a "judgment in favor of either [party] is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment." LA. STAT. § 13:4231.

So as we've observed, "[t]he requirements for issue preclusion under Louisiana state law are identical to those recognized by the Fifth Circuit: (1) the parties must be identical; (2) the issue to be precluded must be identical to that involved in the prior action; (3) the issue must have been actually litigated; and (4) the determination of the issue in the prior action must have been necessary to the resulting judgment." *Keaty*, 397 F.3d at 270–71.

The scope of issue preclusion is defined by the particularized findings of the state court judgment. *Id.* at 271. It applies where "the first court has

4

made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record." *Id.* (quotations omitted). An issue is "actually litigated" when "the issue is raised, contested by the parties, submitted for determination by the court, and determined." *Id.* at 272.

The bankruptcy court erred by finding Adair's unclean hands defense precluded. The entry of default judgment here does not support a finding that the issue was "actually litigated." *Id.* The one-page judgment has no findings of fact or conclusions of law. It simply awards Stutsman damages for the value of the final check with interest, fees, and costs. Absent from the record is any allegation or evidence concerning the potential uncleanliness of Stutsman's actions.

Moreover, the bankruptcy court erred for another reason: Adair's unclean hands defense was not available to him in the Louisiana litigation.

The defense of unclean hands is equitable and not bound by precise elements. *See, e.g.*, *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 815 (1945). In Louisiana, its crux is that "[a] party who seeks equitable relief, must not be *pari delicto*; that is, he himself must be free from any unlawful or inequitable conduct with respect to the matter or transaction in question." *City of New Orleans v. Bd. of Dirs. of the Louisiana State Museum*, 739 So.2d 748, 759 (La. 1999).

The Louisiana Civil Code, by contrast, afforded Adair only a narrower legal defense against Stutsman's action in Louisiana state court. Under Article 2030, "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." LA. CIV.

5

No. 24-30273

CODE. art. 2030. *See also* LA. CIV. CODE. art. 2033 (deeming such contracts nonexistent and making recovery for damages impossible).

Louisiana law views these two defenses differently. *See, e.g.*, *Palowsky v. Cork*, 337 So.3d 550, 557 (La. App. 5 Cir. 2022) (distinguishing the equitable defense of unclean hands from Articles 2030 and 2033). The Civil Code mandates that a court proceed in equity only when a legislative rule is unavailable. LA. CIV. CODE. art. 4.

Stutsman's petition in Louisiana state court was based on breach of contract. Accordingly, had Adair responded to the petition, he would have had to satisfy the considerably stricter requirements of Articles 2030 and 2033.

\* \* \*

We vacate the judgment of the bankruptcy court and remand the case to the bankruptcy court for consideration of Adair's unclean hands defense in the first instance.[1]

---

[1] The dissent would have us decide the unclean hands defense in the first instance. We decline to do so. As we've repeatedly noted, we are "a court of review, not first view." *Utah v. Su*, 109 F.4th 313, 318 (5th Cir. 2024). We of course recognize the principle invoked by the dissent that we can affirm on any grounds available in the record. But considering Stutsman's multiple admitted infractions, we are quite comfortable concluding that these issues are sufficiently contestable to warrant adversarial proceedings in the first instance in the court below. *See, e.g.*, *Lone Star Nat'l Bank, N.A. v. Heartland Payment Sys., Inc.*, 729 F.3d 421, 427 (5th Cir. 2013) ("Though we are free to uphold the district court's judgment on any basis that is supported by the record, we decline to decide these complex issues as they are better addressed by the district court in the first instance.") (cleaned up); *Baker v. Bell*, 630 F.2d 1046, 1056 (5th Cir. 1980) ("a federal appellate court is justified in resolving an issue not passed on below . . . where the proper resolution is beyond any doubt").

No. 24-30273

Don R. Willett, *Circuit Judge*, dissenting:

The bankruptcy court addressed a single question: whether Adair's debt to Stutsman was nondischargeable under 11 U.S.C. § 523(a)(6) because it arose from a "willful and malicious injury"? The bankruptcy court answered yes, and the district court affirmed. I would do the same.

Though the issue is close, I respectfully disagree with the majority's conclusion that the bankruptcy court erred in applying *res judicata* to Adair's unclean hands defense. In both the state court litigation and the bankruptcy proceeding, Adair's defense rested on the same factual premise: that Stutsman lacked the license required for construction projects exceeding $75,000. I agree with the majority that Adair could have raised that licensing issue only as a "clean hands" defense in the earlier state court breach-of-contract action. Accordingly, the equitable "unclean hands" defense was technically available for the first time in the bankruptcy discharge proceeding.[1] But the label does not alter the core question: whether Stutsman's lack of licensure excused Adair's nonpayment. That issue was fully available in state court. Adair simply chose not to raise it.

The bankruptcy court rightly rejected Adair's "unclean hands" argument as a repackaging of the same defense in equitable terms. That the state court litigation ended in a bare, one-page default judgment with no findings of fact or conclusions of law is beside the point. The issue could have been adjudicated but went unraised—entirely due to Adair's own inaction.[2] *Res judicata* bars a second bite at the apple.

---

[1] *Ante*, at 6.

[2] *See, e.g.*, *Johnson v. Hypolite*, 2005-598 (La. App. 3 Cir. 12/30/05), 918 So. 2d 1121, 1122–23 (applying res judicata based on prior default judgment).

7

No. 24-30273

Even if the majority is correct that the bankruptcy court should have addressed Adair's "unclean hands" defense on the merits, I would still affirm the judgment. That defense fails—and the record supports the conclusion that Adair's debt arose from a willful and malicious injury.[3]

Under the "unclean hands" doctrine, a court may deny equitable relief where the claimant "can be shown to have engaged in fraud or bad faith behavior."[4] There is no evidence in this record that Stutsman acted fraudulently or in bad faith.

It is undisputed that Stutsman lacked the license required for the full scope of the project. But Stutsman believed it could lawfully divide the project into smaller phases, each under the $75,000 threshold permitted by its existing license. Even if that belief was mistaken, nothing suggests it was dishonest. Nor does the record suggest that any deficiencies in Stutsman's work were willful or undertaken in bad faith. Stutsman's manager acknowledged that minor tasks remained at the time Adair withheld payment. But he described them as a routine "punch list" and offered a proportional reduction in the final payment. As for Adair's chief complaint— water damage—the manager testified that it stemmed from a preexisting rusted pipe and fell outside the scope of Stutsman's work.

Adair disputed much of this testimony at trial, but the bankruptcy court found Stutsman's manager more credible. As the court

---

[3] "This Court may affirm on grounds other than those relied upon by the district court when the record contains an adequate and independent basis for that result." *Lauren C. by & through Tracey K. v. Lewisville Indep. Sch. Dist.*, 904 F.3d 363, 374 (5th Cir. 2018) (quotation omitted); *see also In re Williams*, 298 F.3d 458, 462 n.5 (5th Cir. 2002) (applying this rule in bankruptcy appeal).

[4] *In re Austin*, No. 07-20702, 2009 WL 3193167, at *14 (Bankr. W.D. La. Oct. 2, 2009) (citing *Alcatel U.S.A., Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 796 (5th Cir. 1999)) (applying unclean hands doctrine in bankruptcy proceeding).

explained, "[t]his case largely turns on the relative credibility of the witnesses." And because the bankruptcy court observed those witnesses firsthand, I see no basis to second-guess its credibility determinations.[5] Nothing in the record supports a finding of fraud or bad faith on Stutsman's part. The unclean hands defense fails.

Because Adair's defense fails, I would affirm the bankruptcy court's conclusion that his debt to Stutsman arose from a willful and malicious injury. The record offers no support for Adair's decision to withhold more than $70,000. He knew that little—if any—work remained. He knew the mortgage company had inspected the property and certified the job as complete. Yet he withheld payment. He rejected Stutsman's repeated offers to resolve any remaining issues and instead chose to keep the money.

Adair claimed he needed the funds to hire new contractors to fix Stutsman's work. Yet he admitted to spending only $4,000—far less than the $70,000 he withheld. He later testified that he spent an additional $20,000 in cash, but the bankruptcy court found that assertion "rather incredible." Adair also acknowledged that some appliances were never replaced, and he failed to produce photographic evidence of any actual repairs.

Perhaps most tellingly, trial testimony revealed that Adair contacted his bank before depositing the check—to ask whether it would be illegal to do

---

[5] We must give "due regard . . . to the opportunity of the [bankruptcy] court to judge the credibility of the witnesses." *Matter of Perez*, 954 F.2d 1026, 1027 (5th Cir. 1992) (qouting FED R. CIV. P. 52(a)). We may reverse the bankruptcy court's factual determinations only "upon a definite and firm conviction that the Bankruptcy Court erred." *In re Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

No. 24-30273

so. As the bankruptcy court rightly concluded, this showed that Adair "knew what he was doing was questionable, perhaps even illegal."

By depositing the check despite knowing the work was essentially complete, Adair knowingly breached his contract with substantial certainty that Stutsman would be harmed.[6] In my view, that conduct was willful and malicious conduct under § 523(a)(6), making the debt nondischargeable.

Respectfully, I dissent.

---

[6] *Williams*, 337 F.3d at 509–10 (describing the § 523(a)(6) "willful and malicious" standard in the breach-of-contract context as "a knowing breach of a clear contractual obligation that is certain to cause injury").