695 So.2d 1085 (1997)
Robert B. KEATY, Thomas S. Keaty and Keaty & Keaty
v.
Roy A. RASPANTI.
Nos. 96-CA-2839, 96-CA-2840.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1997.
Roy A. Raspanti, Metairie, in proper person.
Joseph P. Raspanti, New Orleans, and Thomas E. Gibbs, Baton Rouge, for appellee.
John S. Keller, LSB, New Orleans, and John W. deGravelles, deGravelles, Palmintier & Holthaus, Baton Rouge, and David M. Ellison, Jr., Ellison and Ellison, Baton Rouge, for appellants.
Before LOBRANO, ARMSTRONG and LANDRIEU, JJ.
LOBRANO, Judge.
Plaintiffs, Robert B. Keaty, Thomas S. Keaty and Keaty and Keaty (collectively Keaty) appeal the dismissal of their two consolidated suits for apportionment of attorney fees. Defendant, Roy A. Raspanti, successfully moved for a summary judgment which the trial court granted on August 13, 1996.[1] The claims asserted by Keaty seek a portion of the legal fees received by Raspanti as a result of his representation of Keaty's former clients.
The procedural history leading up to this dispute between Keaty and Raspanti began in 1985 when Connie Byrd retained Keaty's services, on a contingency basis, in connection with the severe personal injuries received by her minor son, Gregory Byrd.
*1086 Suit was subsequently filed on that claim in the 26th Judicial District Court, Parish of Bossier against the Bossier School Board, Pellerin Milnor Corporation and Pellerin Laundry Machinery Sales Company, Inc. On March 28, 1987 Pellerin Milnor settled, and the matter proceeded to trial against the School Board.
On July 31, 1987 the trial court ruled in favor of the School Board and Keaty filed a notice of appeal. Because of a dispute on the fees owed to Keaty, the Byrds hired John Litchfield, an attorney, to negotiate with Keaty. As a result, the Byrds and Keaty entered into a compromise agreement on December 3, 1987. On January 28, 1988 Litchfield formally notified Keaty, in writing, that they were discharged as attorneys for the Byrds. On March 7, 1988, a formal motion and order was signed substituting Raspanti as the Byrds' attorney. On March 11, 1988 Keaty filed an intervention in the Bossier Parish suit seeking additional attorney fees should the appeal against the School Board be successful.
On May 10, 1988 the Second Circuit Court of Appeal reversed the judgment in favor of the School Board and remanded the case. The School Board subsequently settled, and Raspanti collected his contingency fee on that settlement as per his contract with the Byrds.[2] In July of 1991 the trial court dismissed Keaty's intervention on a motion for summary judgment. The court reasoned that the December 3rd compromise between Keaty and the Byrds settled all of their fee disputes, not just those relating to the claim against the manufacturer. Despite Keaty's contrary argument, the trial court rejected their claim for additional fees. That judgment, although appealed, was dismissed as untimely by the Second Circuit on March 12, 1992. The Supreme Court denied writs, thus the judgment dismissing Keaty's intervention is final.
In November of 1991 and February of 1992, Keaty sued Raspanti in Civil District Court seeking a portion of the attorney fees collected by Raspanti. The November suit alleges tortious interference of contract and unjust enrichment, while the February suit seeks an apportionment of the attorney fees on a quantum meruit basis. In response, Raspanti filed exceptions of prescription, no cause of action, res judicata and a motion for summary judgment. All were denied at the trial level and this court denied supervisory writs. We opined no error by the trial court on the prescription, no cause of action and summary judgment issues. We also concluded res judicata was inappropriate because Raspanti was not a party to the intervention filed in Bossier Parish, nor was the object of that suit the same as the present.
On May 3, 1996, Raspanti reurgued its motion for summary judgment making the additional argument that once Keaty was denied additional fees from the Byrds by the district court in Bossier, they could not recover additional fees from him. In support, Raspanti pointed to the admissions made in brief by Keaty that the "root source of their claim is their contract with the Byrds" and that they had no contract with Raspanti. Keaty argued first that this court, in its previous writ denial, had considered that argument and rejected it. Second, they argued that their claim was for an apportionment of fees on a quantum meruit basis premised on the work they performed.
The trial court rejected the idea that this court had already considered and dismissed Raspanti's arguments. The court framed the issue as "when does a ruling of another court on a similar issue preclude the Court from deciding it again." The court then granted Raspanti's summary judgment concluding that Keaty had compromised his claim to future attorney fees and that the Bossier district court had already rejected his claim for additional fees, albeit the claim was against the Byrds. From that judgment, Keaty perfects the instant appeal.
On appeal Keaty elaborates various issues with respect to the correctness of the trial court's summary judgment. However, those issues are supported by two basic arguments. First, Keaty urges that the law of the case doctrine precludes reconsideration of Raspanti's motion, and second, that material issues of fact regarding interpretation of *1087 the compromise, the lack of supporting proof by Raspanti and the recent case of O'Rourke v. Cairns, 95-3054 (La.11/25/96), 683 So.2d 697, demands a remand for trial on the merits.

LAW OF THE CASE:
Keaty correctly observes that as a general rule, the law of the case doctrine precludes reconsideration of this Court's previous determination of an issue. However, application of that doctrine with respect to decisions made on supervisory writs is discretionary. Dodson v. Community Blood Center, 633 So.2d 252 (La.App. 1st Cir.1993), writ denied, 93-3158 (La.3/18/94), 634 So.2d 850 and 93-3174 (La.3/18/94), 634 So.2d 851, and cases cited therein. Furthermore, the doctrine is inapplicable in cases of palpable error or where manifest injustice would occur. Id.
Keaty argues that the same issues were argued in Raspanti's previous motions and were rejected by this court, and thus we are bound by that disposition. After review of our previous disposition, we are satisfied that Raspanti's argument in support of his previous motion was not fully considered by this court or the trial court. Although we previously ruled that the exception of res judicata was not proper, that ruling does not foreclose consideration of Raspanti's contention that the compromise between Keaty and Byrd nullifies any claim against him. Even though we correctly held that it (the compromise) is not res judicata between Raspanti and Keaty, that ruling could not have considered the argument supporting the judgment before us. Furthermore, denial of a motion for summary judgment does not preclude mover from reurging the motion on additional grounds. See, Francioni v. Rault, 570 So.2d 36 (La.App. 4th Cir.1990), writ den. 575 So.2d 371 (La.1991).

MERITS OF SUMMARY JUDGMENT
We make the initial observation that while arguing their motion for rehearing, Keaty acknowledged that their tortious interference claim has prescribed and that their sole basis for recovery is an apportionment of fees on a quantum meruit basis. In support, they rely on the pronouncements of Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La. 1978). In that case the court concluded that an attorney discharged by his/her client, without cause, was entitled to an apportionment of attorney fees with the client's second attorney provided the total fees paid did not exceed the "highest ethical contingency percentage to which the client contractually agreed." Keaty argues that their compromise agreement with the Byrds is irrelevant to their claim against Raspanti because of the Saucier ruling. Alternatively, they argue that if it (the compromise) is relevant, then summary judgment is inappropriate because the agreement is susceptible of differing interpretations. Simply put, Keaty asserts that a trial on the merits will show that their intent in the compromise was to settle only their fee claims for the settlement with Pellerin Minor, and not with any other defendant. For the following reasons we disagree with those arguments.
It is undisputed that Keaty cannot recover additional legal fees from the Byrds. A final judgment has been rendered in Bossier Parish declaring that any claim Keaty had was compromised and settled in the December 3, 1987 agreement. The Bossier Parish court specifically held that the agreement encompassed claims for both past and future fees. We conclude that the Bossier judgement also precludes Keaty from seeking additional fees from Raspanti.
The source of Keaty's claim against Raspanti is their contingency contract with the Byrds. Obviously, if they had never been retained by the Byrds in the first place, Keaty would have no legal basis to seek attorney fees from anybody. Once the court in Bossier Parish determined that Keaty no longer had any claims under that contract, the legal basis supporting their claim against Raspanti ceased to exist.
Despite Keaty's reliance on Saucier, that case does not create a cause of action for attorney fees separate from and independent of the original contingency agreement. That case is consistent with our reasoning. In Saucier, the discharged attorney's claim for an apportionment of fees was premised on the contingency fee contract he had with his former clients. Even though the attorney *1088 was discharged, his claim for fees against his former clients was still viable. There had been no mutual release between them. Thus, the legal basis for his fee apportionment claim against the second attorney was still actionable. In the instant case, Keaty no longer has an actionable claim against the Byrds and thus his claim against Raspanti for apportionment under the Saucier rationale is no longer actionable.
A contrary holding would lead to the absurd result that an attorney, who is barred from collecting additional fees from his former clients, could still rely on his contract with those clients to pursue additional fees against the second attorney. Of course, if there was a relationship between Keaty and Raspanti, independent of the fee contract with the Byrds, Keaty's argument would have merit. That relationship, presumably contract or quasi contract, would be the legal basis for a Saucier type apportionment claim against Raspanti. However, no such independent relationship is alleged or argued. To the contrary, Keaty argues the contract with the Byrds as the source of his claim.
Our reasoning negates Keaty's arguments relative to the intent of their compromise with the Byrds. That intent has already been judicially determined to be adverse to Keaty's contentions. It also negates the necessity of determining whether Keaty was discharged with or without cause as discussed in O'Rourke v. Cairns, supra.[3] Even assuming they were discharged without cause, that assumption makes no difference. A final judgement has determined that Keaty is not entitled to any additional attorney fees from the Byrds and there are no unresolved issues of material fact. Absent any independent relationship with Raspanti, as a matter of law, we hold that Keaty has no claim against Raspanti.
For the above and foregoing reasons, the trial court judgment is affirmed.
AFFIRMED.
NOTES
[1] Raspanti's motion for summary judgment had been previously denied. However, it was reurged on different grounds.
[2] Raspanti's contract called for a fee of 50% of the settlement, the same as Keaty's contract.
[3] In O'Rourke, the Supreme Court differentiated the method of apportioning fees between a contingency fee attorney discharged without cause (Saucier) and with cause.