781 So.2d 607 (2001)
Robert B. KEATY, Thomas S. Keaty and Keaty and Keaty
v.
Roy A. RASPANTI.
No. 2000-CA-0221.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 2001.
Rehearing Denied March 15, 2001.
*608 John S. Keller, New Orleans, LA, and John W. deGravelles, deGravelles, Palmintier, & Holthaus, Baton Rouge, LA, Counsel for Plaintiffs/Appellees.
Thomas E. Gibbs, Baton Rouge, LA, and Roy Raspanti, Metairie, LA, (in proper person) and Joseph P. Raspanti, Metairie, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge BYRNES, Judge JONES, Judge KIRBY, Judge LOVE, and Judge TOBIAS.
WILLIAM H. BYRNES, III, Judge.
The defendant-appellant, Roy A. Raspanti, filed a motion for sanctions against plaintiffs-appellees, Robert B. Keaty, Thomas S. Keaty, and Keaty & Keaty which the trial court dismissed pursuant to exceptions of res judicata and prescription filed by the plaintiffs-appellees. We reverse and remand.
This case involves a dispute between the plaintiffs and the defendant over legal fees arising out of a claim asserted by Connie Byrd[1] on behalf of her minor son for severe personal injuries. For a history of this matter and the facts of this case refer to Keaty v. Raspanti, 96-2839 & 96-2840 *609 (La.App. 4 Cir. 5/28/97), 695 So.2d 1085, writ den. 97-1709 (La.10/13/97), 703 So.2d 614, wherein the dismissal of the two consolidated suits filed by the Keatys against Raspanti were affirmed.
As pointed out in our 1997 opinion, in November of 1991 the Keatys sued Raspanti for a portion of the attorney fees collected by Raspanti alleging tortious interference of contract and unjust enrichment. The Keatys filed a second suit against Raspanti seeking a portion of the same fees on a quantum merit basis. Raspanti filed exceptions of prescription, no cause of action, res judicata, a motion for summary judgment and a motion for sanctions, all of which were denied.
On October 2, 1992 this Court denied Raspanti's writ application in Keaty v. Raspanti, 92-C-1793 (La.App. 4 Cir.1992, unpublished), for the following reasons:
The trial court did not err by denying relator's exception of prescription. The Keatys' claims are broader than a tortious interference with a contract, i.e., they encompass contractual claims and a claim for apportionment of attorney's fees.
Whether or not the Keatys made a claim for unjust enrichment, the pleadings set forth a claim for apportionment of attorney's fees. Denial of relator's exception of no cause of action was proper.
The trial court correctly denied relator's motion for summary judgment. Whether the attorney's fees are solely or partially the result of the Keatys' efforts and services is a material issue to be adjudicated.
Relator's exception of res judicata was properly denied under the pre-1991 La. R.S. 13:4231. Relator was not a party to the suit filed in Bossier City and the "thing demanded" in the present suit is not the same.
The trial judge did not abuse his much discretion by failing to impose sanctions under La. C.C.P. art. 863.
Shortly thereafter, on November 23, 1992 Raspanti propounded the following requests for admission of fact:
1. There was no contract between Roy Raspanti and Robert B. Keaty, Thomas S. Keaty and/or Keaty and Keaty.
2. There never has been an is not now any contract of any nature or kind between Roy Raspanti and Robert B. Keaty, Thomas S. Keaty and/or Keaty and Keaty.
On August 3, 1994 the following responses were filed on behalf of the Keatys:
RESPONSE TO REQUEST NO. 1
Denied. The Keatys' claims encompass contractual claims and a claim for apportionment of attorney's fees.
RESPONSE TO REQUEST NO. 2
Denied. The Keatys' claims encompass contractual claims and a claim for apportionment of attorney's fees.
On February 19, 1996 the Keatys admitted in a written opposition to a motion for summary judgment filed by Raspanti that they had no contract with Raspanti.
On May 3, 1996, Raspanti reurged his motion for summary judgment making the additional argument that once the Keatys were denied additional fees from the Byrds by the district court in Bossier, they could not recover additional fees from him. In support, Raspanti pointed to the admissions made in brief by Keaty that the "root source of their claim is their contract with the Byrds" and that they had no contract with Raspanti. The trial court rendered judgment in favor of Raspanti on August 13, 1996. This Court affirmed on May 28, 1997. Keaty v. Raspanti, 96-2839 & 96-2840 (La.App. 4 Cir. 5/28/97), 695 So.2d 1085, supra.
*610 On June 27, 1997, a month after the May 27, 1997 affirmation of the trial court judgment by this Court, and over three months prior to the denial of the Keatys' request for review by the Supreme Court, Raspanti filed a motion for sanctions. On July 23, 1999, the trial court granted the Keatys exceptions of prescription and res judicata as to the motion for sanctions filed by Raspanti without written reasons. It is from that judgment of the trial court that Raspanti appeals.

I. PRESCRIPTION
Raspanti contends that his claim for sanctions has not prescribed because it was brought on June 27, 1997 within less than a year after this Court rendered judgment affirming the dismissal of the Keatys' claim against Raspanti. We agree. Connelly v. Lee, 96-1213 (La.App. 1 Cir. 5/9/97), 699 So.2d 411. In Connelly the plaintiff filed a suit which the defendant contended contained allegations which the plaintiff knew had no basis in fact. The suit was filed on February 2, 1993. However, the Connelly court used November 2, 1993 in its determinations of whether defendant's claim for sanctions was timely, because that was the date that the final judgment dismissing plaintiffs baseless claim became final. The Connelly court concluded that the defendant's claim for sanctions filed on November 2, 1994, exactly one year after the trial court judgment became final, was timely. The Connelly court found no Louisiana cases specifying exactly how long a delay in the filing of a motion for sanctions is permissible and noted that "LSA-C.C.P. art. 863 is silent as to when a motion for sanctions should be filed." The Connelly court then looked to federal cases which likewise failed to delineate any precise time period. General Motors Acceptance Corporation v. Charlie Bates Chevrolet-Buick, Inc., 954 F.2d 1081 (5 Cir.1992), discussed in Connelly, merely held that "a 33-month delay between the offending conduct and the motions for sanctions was inordinate,"[2] without going on to specify what period of time would be permissible.
We find the use of the phrase "offending conduct" by the Connelly court significant. We also find the following language quoted in Connelly from General Motors Acceptance Corporation, supra, significant:
[I]t is precept that sanctions be imposed within a time frame that that has a nexus to the behavior sought to be deterred.
Connelly, p. 10, 699 So.2d at 417.
References to "offending conduct" and "behavior sought to be deterred" bring to mind "offenses" or torts which have a one year prescriptive period which we infer informed the one-year limitation argument urged in Connelly, although the sanctionable behavior in Connelly was never specifically referred to as tortious in nature. However, as we find the labels "offending conduct" and "behavior sought to be deterred" apt descriptions of sanctionable behavior, and the one year prescriptive period seems reasonable, we see no reason why sanctionable conduct should not be classified as an offense for prescriptive purposes.
But just as the fact that the one-year prescriptive period for offenses is well established and known does not resolve all tort prescription issues. There still remains the question of when should the year time limit start running. Dating the time limit from the date of a final judgment as was done in Connelly seems consistent with the concept of a continuing *611 tort, i.e., where the offending conduct is in the nature of an unfounded claim, that conduct can be said to persist until such time as the unfounded claim is finally disposed of.[3]
Accordingly, we conclude that it was error for the trial court to grant the Keatys' exception of prescription.

II. RES JUDICATA
Raspanti contends that it was error for the trial court to grant the Keatys exception of res judicata. The Keatys argue that Raspanti's motion for sanctions that is the subject of this appeal is just a warmed over version of the motion Raspanti filed in 1992 which was rejected by the court as set forth in the procedural history of this case early on in this opinion. The Keatys assert that the prior dismissal of Raspanti's claim for sanctions should furnish a res judicata basis for dismissing the claim for sanctions that is the subject of this appeal. The facts of the instant claim are dramatically different now from what they were at the time the claim for sanctions was dismissed in 1992. Since that time the record has evolved to where there is now, in effect, an admission by the Keatys that the response to Raspanti's requests for admissions denying the existence of a contract between themselves and Raspanti could charitably be described as inaccurate. More significantly, we now have in the record a final judgment dismissing the Keatys' claims. It is difficult to establish definitively that a claim is baseless or frivolous when it has not yet been found sufficiently lacking in merit to have been dismissed by the court. We find that the situation in this case is analogous to the doctrine that allows the reurging of a motion for summary judgment as the record develops.
Additionally, we conclude that it is just as inappropriate to follow the law of the case in this appeal as we did in our previous opinion. Keaty v. Raspanti, supra, p. 4, 695 So.2d at 1087. The rejection of Raspanti's claim in our previous unpublished 1992 writ opinion (quoted in its entirety earlier in this opinion) is not binding on this Court where palpable error or where manifest injustice would occur. See Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 705 (La.App. 1 Cir.), writ denied, 605 So.2d 1099, 1100 (La.1992).

III. SANCTIONS
Our reading of the trial court judgment indicates that the dismissal of Raspanti's claim was based on the granting of the Keatys' exceptions of res judicata and prescription, which exceptions this Court has just found to have no merit. The trial court judgment was not a ruling on the merits of Raspanti's claim. Therefore, this court may conduct a de novo review of the merits of the Keatys' claim.
At the time of the rendering of the earlier writ opinion rendered by this Court in 1992, this Court stated that there remained unresolved issue of material fact. The 1997 opinion of this Court, Keaty v. Raspanti, 96-2839 & 96-2840 (La.App. 4 Cir. 5/28/97), 695 So.2d 1085, resolved those issues, revealing them all to be baseless. *612 In 1997, we noted that the Keatys acknowledged that "their tortious interference claim had prescribed and that their sole basis for recovery is an apportionment of fees on a quantum meruit basis." The Keatys concede that any such claim must be derivative of their relationship with the Byrds, i.e., the only way they would be entitled to quantum meruit compensation would be for work performed for the Byrds. But this Court declared that the Bossier Parish judgment precludes the Keatys from pursuing Raspanti. We found that it had already been judicially determined that the Keatys' had no further claims against the Byrds, past, present or future. This Court stated that to allow the Keatys' claim against Raspanti with whom they had no contractual relationship "would lead to [an] absurd result."
We find that the Keatys knew and must have known all along that their claim for tortious interference had prescribed. We find that the Keatys knew that all of their claims against the Byrds were disposed of in the Bossier Parish proceedings. We find that the Keatys did not reasonably rely on Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978), in asserting a claim against Raspanti. We find that the Keatys' answers to Raspanti's request for admissions, in which they denied the non-existence of a contract between them and Raspanti, was disingenuous. We find that the entire proceedings by the Keatys against Raspanti was knowingly without foundation, crafted for purposes of harassment and carried out in a manner designed to deliberately prolong the proceedings needlessly.
For the foregoing reasons, we reverse the judgment of the trial court based on a finding that Raspanti is entitled to sanctions and all costs of these proceedings here and in the lower court. However, we find that the record is not sufficiently complete to enable this Court to fix the amount of sanctions to be awarded. Accordingly, in addition to reversing the judgment below, we remand the matter for an evidentiary hearing for the fixing of sanctions.
REVERSED AND REMANDED.
JONES, J. dissents for the reasons assigned by LOVE, J.
LOVE, J., dissents with reasons.
TOBIAS, J., concurs.
TOBIAS, J., concurs.
I respectfully concur in the reversal of the ruling of the trial court.
The majority adopts one year as the liberative prescription period for requesting sanctions pursuant to La. C.C.P. art. 863. Our statutory law establishes no formal period of time. In Connelly v. Lee, 96-1213 (La.App. 1 Cir. 5/9/97), 699 So.2d 411, which is the only Louisiana appellate court that has addressed the issue, the First Circuit Court of Appeal has adopted the federal jurisprudential rule of reasonableness a period of time that is not inordinate.
In Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, the Louisiana Supreme Court has determined that La. R.S. 9:5605 is a three year peremptive period for malpractice claims against lawyers. The rule is, in my opinion, unduly harsh given that a lawyer's client does not generally know of the act of malpractice committed by the lawyer until the case is over. Moreover, the ruling places a client in the untenable position of having to file suit against the lawyer while the lawyer is still in active representation of the client's claim.
I recognize that lawyers are reluctant to file claims for sanctions against other lawyers. When a lawyer makes such a claim, *613 the lawyer technically opens himself or herself to a claim of defamation or for a counterclaim for sanctions. And the counterclaim opens up the possibility of a further counterclaim by the lawyer who originally sought sanctions. Theoretically, no end exists to counterclaims.
In the case at bar, I find that the appellant waited a reasonable period of time to file his claim for sanctions, namely, until the Court of Appeal had rendered its decision in the underlying case. That is, the appellant did not wait an inordinate period of time to file his claim. Common sense dictates that, absent an extraordinary set of facts, a period of one year from the entry of a final and definitive judgment is the outer limit for filing a claim for sanctions. (Such does not mean that in this case the appellee's pleadings are subject to sanctions because that issue is not presently before this Court.)
Inasmuch as a prescriptive period is subject to interruption, I do not find a period of one year is unreasonable. I would, however, not set a time limit but would shift the burden of proof to the proponent of the sanctions after one year from a definitive judgment relating to the conduct that is subject to sanctions.
LOVE, J., dissenting.
I respectfully dissent.
The majority adopts one year as the liberative prescriptive period for requesting sanctions pursuant to La. C.C.P. article 863. Our statutory law establishes no such formal period of time. A motion for sanctions is not a tort action, with a mandatory prescriptive period. Until the legislature decides to provide specific guidance or set a time period for the filing of motions for sanctions, the question of when a motion for sanctions should be filed and served is best decided on a case by case basis.
In the instant case, the motion for sanctions was filed June, 1997, almost six years from the date of the filing of the action which the motion sought to deter. (Deterrence being the purpose of Article 863). In my opinion, the trial court was therefore, correct in finding the action was not filed within a reasonable period of time.
Furthermore, no reasons were presented which dictate a finding that the trial court abused its discretion in granting the exception of prescription. I would affirm the trial court.
NOTES
[1] This appears to be the same matter referred to as one of the many grounds for the disbarment of Robert B. Keaty in In Re Keaty, XXXX-XXXX (La.9/29/00), 769 So.2d 1175, in which the Supreme Court noted that: "[Robert B. Keaty] misappropriated $300,000 of client funds and failed to accurately account for the whereabouts of another $951,000 of that client's funds (the Byrd matter)." Emphasis added. This might explain why the Byrds' chose to replace Keaty with Raspanti. It also does nothing to enhance Kealy's contention that the claim for a portion of the fee due Raspanti was made in good faith.
[2] Connelly, p. 10, 699 So.2d at 416.
[3] We confess to being confused by the following language in Connelly, p. 10-11, 699 So.2d at 417, which we are unable to reconcile with the chronology of specific dates given in Connelly for the filing of the petition (February 2, 1993), the date of the final judgment (November 2, 1993) and the date the claim for sanctions was filed (November 4, 1994):

Considering the facts in this case, we feel that the imposition of sanctions within a year after plaintiff filed his objectionable petition.... Moreover, a year delay from the filing of plaintiff's petition is not inordinately long. [Emphasis added.]