# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 8, 2012

No.  10-20800

Lyle W. Cayce
Clerk

In the Matter of: SCOTT D. SHCOLNIK,

Debtor

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

SCOTT D. SHCOLNIK,

Appellee

v.

RAPID SETTLEMENTS LTD;
CAPSTONE ASSOCIATED SERVICES, LIMITED,

Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and HAYNES, Circuit Judge, and CRONE, District Judge.[*]

EDITH H. JONES, Chief Judge:

The debtor, a former company officer, allegedly attempted to obtain one million dollars by falsely claiming an ownership interest in the company and threatening public exposure of alleged illegal activity.  After the debtor lost an

---

[*] District Judge of the Eastern District of Texas, sitting by designation.

No.  10-20800

arbitration proceeding, he filed for bankruptcy.  The question here is whether the company's attorneys' fees for the arbitration represent a nondischargeable debt under 11 U.S.C. § 523(a)(4) or (a)(6).  We reverse and remand the summary judgment rendered against the creditors.  The debt may have arisen for willful and malicious injury and may therefore be excepted from discharge by § 523(a)(6).

## Background

Scott Shcolnik, the Appellee/Debtor, was an employee of Capstone Associated Services ("Capstone") and Rapid Settlements Ltd. ("Rapid"), creditors who describe themselves as "alternative risk planning" companies. Shcolnik became Capstone's vice-president and Rapid's president. In 2004, he was offered an ownership interest in Rapid, but according to Appellants, he rejected the offer.  Shcolnik nevertheless began to claim that he was a partial owner of Rapid, and he was fired.  According to Appellants, he absconded with various documents from their offices.  Shcolnik then began threatening to disclose alleged criminal and regulatory violations by Rapid and Capstone if they did not "buy-out" his "ownership interests."  In emails, he referred to a "doomsday plan" which would be launched if Stewart Feldman, the primary owner of Rapid and Capstone, did not "properly compensate" him for his "ownership interests . . . which appear to be worth in excess of $1,000,000."  He threatened a "massive series of legal attacks . . . which will likely leave you disbarred, broke, professionally disgraced, and rotting in a prison cell," and expressed his hope that Feldman would be the victim of prison rape.

Rapid and Capstone (along with other entities) initiated an arbitration proceeding seeking a declaratory judgment that Shcolnik did not own an interest in any of the entities.  The arbitrator held in their favor and awarded $50,000 in attorneys' fees to Rapid, Capstone, and the other entities.  A state court confirmed the award.

2

No. 10-20800

Four days after the state court announced it would confirm the arbitration award, Shcolnik filed for Chapter 7 bankruptcy. Rapid and Capstone filed a complaint alleging that the $50,000 attorneys' fee award was nondischargable under, *inter alia*, 11 U.S.C. §§ 523(a)(4) and (a)(6), which except from discharge debts resulting from certain wrongful conduct. Both parties sought summary judgment on the non-dischargeability claims; the bankruptcy court granted the Debtor's motion without issuing an opinion.[1] Rapid and Capstone appealed to the district court, which affirmed the bankruptcy court's rulings. Appellants here contest only the rulings on the § 523 issues.

We address each in turn.

## Standard of Review

This court reviews the bankruptcy court's grant of summary judgment *de novo*, using the same standard employed by the district court. *In re Ark-La-Tex Timber Co., Inc.*, 482 F.3d 319, 328 (5th Cir. 2007). We affirm summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* at 328 (citing FED. R. CIV. P. 56(c)). Facts are in dispute if a jury could find in favor of the nonmovant and are material if they might affect the outcome of the suit under the law. *Id.* at 329.

## Discussion

### A.

11 U.S.C. § 523(a)(4) provides that a discharge does not discharge an individual debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. §523(a)(4). Appellants allege that Debtor engaged in fraud or defalcation while acting in a fiduciary

---

[1] The bankruptcy court held a trial on the remaining issues, which are not relevant to this appeal, then ruled in Debtor's favor on those issues.

3

capacity. The district court concluded that Appellants failed to raise a genuine issue of material fact as to whether the Debtor acted in a fiduciary capacity for the purposes of §523(a)(4).[2]

Under § 523(a)(4), the term "fiduciary" is distinct from the concept of a "fiduciary" under the common law; it is "limited to instances involving express or technical trusts. The purported trustee's duties must . . . arise independent of any contractual obligation." *Matter of Tran*, 151 F.3d 339, 342 (5th Cir. 1998) (citations omitted). *See also In re Hickman*, 260 F.3d 400, 404-05 (5th Cir. 2001). However, state law may create a fiduciary relationship whose breach leads to nondischargeability under § 523(a)(4). *See In re Gupta*, 394 F.3d 347, 350 (5th Cir. 2004) ("This court has, on the other hand, not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable.") (collecting cases). More precisely, we held a debt nondischargeable under § 523(a)(4) where the debtor, who did not deny that he was a fiduciary under the provision, was an officer of the creditor. *See Matter of Moreno*, 892 F.2d 417, 421 (5th Cir. 1990).

Even if a corporate officer may be a fiduciary for purposes of § 523(a)(4), the debt at issue here is not a debt *"for* fraud or defalcation *while acting* in a fiduciary capacity." 11 U.S.C. § 523(a)(4) (emphasis added). Appellants argue that Shcolnik violated his fiduciary duty by taking files belonging to them, which constitutes "defalcation." It is true that defalcation does not require fraud or embezzlement, but only willful neglect of duty. *Schwager v. Fallas*, 121 F.3d

---

[2] In one paragraph, Appellants now additionally contend that Shcolnik's purloining of company records also violated § 523(a)(4). They made no such argument at the district court, which properly deemed any arguments regarding "embezzlement" and "larceny" waived. This court does not consider arguments an appellant failed to raise in the district court absent exceptional circumstances, even if those issues were raised in the bankruptcy court. *In re Bradley*, 501 F.3d 421, 433 (5th Cir. 2007) (collecting cases).

No. 10-20800

177, 182 (5th Cir. 1997). But the debt here is not based on Shcolnik's absconding with the documents; nor is it contended that Shcolnik owes Appellants the documents or their monetary equivalent. The only debt at issue here is the $50,000 in attorneys' fees awarded in the arbitration proceeding, which resolved Shcolnik's allegations that he owned an interest in the company. Appellants presumably would have pursued arbitration irrespective of Shcolnik's threats relating to the documents. ("Due to Shcolnik's false claims of ownership . . . these entities were forced to institute an arbitration proceeding against Shcolnik. . . . Rapid and Capstone had actually incurred approximately $70,000 in attorney's fees and costs *in their efforts to disavow Shcolnik's falsely claimed ownership*." *In re Shcolnik*, Ch. 7 Case No. 06-33328, Adv. No. 07-3124, slip op. at ¶¶ 10-11 (Bankr. S.D. Tex. Mar. 29, 2008) (emphasis added)). On this basis, we affirm the district and bankruptcy courts' determination that Appellants failed to create a genuine issue of material fact regarding their § 523(a)(4) claim.

**B.**

Appellants also seek to exempt the $50,000 award as a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). They argue that Shcolnik used the stolen documents, threats of criminal reports, and claims of ownership in the company in tandem as a scheme to extract $1,000,000 from them in the guise of a "buyout" of his pretended "ownership interests."[3]

The district court held that Appellants could not establish a genuine issue of material fact as to willfulness, because they did not actually pay Shcolnik the million dollars he demanded. The court interpreted the Supreme Court to

---

[3] In addition to the arbitration action regarding Shcolnik's purported ownership interest, Appellants pursued injunctive relief regarding documents he claimed to possess and his threats to disclose secrets. They obtained temporary restraining orders preventing Shcolnik from disclosing trade secrets or confidential information. The state court found that Shcolnik had "threatened a wide range of unlawful and improper actions."

5

No. 10-20800

require that a debtor intend "the alleged injury itself" in order to fulfill the willfulness component of 11 U.S.C. § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974 (1988). *Kawaauhau* held that a willful injury, in this context, is a "*deliberate or intentional injury*, not merely a *deliberate or intentional act* that leads to injury." 533 U.S. at 61, 118 S. Ct. at 977. Appellants have neither alleged nor offered evidence that Shcolnik intended to inflict litigation costs on them, which is the debt for which they urge nondischargeability.

Unfortunately, the district court failed to consult this court's opinions interpreting *Kawaauhau*. First, we have held that an injury is " 'willful and malicious' where there is either an objective substantial certainty of harm or a subjective motive to cause harm." *In re Miller*, 156 F.3d 598, 606 (5th Cir. 1998); *In re Williams*, 337 F.3d 504, 508-09 (5th Cir. 2003). Second, we noted that "it would seem peculiar to deem an action causing injury not 'willful' when the tortfeasor's action was in fact motivated by a desire to cause injury." *Miller*, 156 F.3d at 604. In an opinion nearly contemporaneous with *Miller*, this court stated that " 'the debtor must have intended the actual injury that resulted.' " *State of Texas v. Walker*, 142 F.3d 813, 823 (5th Cir. 1998) (quoting *In re Delaney*, 97 F.3d 800, 802 (5th Cir. 1996)). This statement, however, arose in the course of distinguishing willful and malicious injury, as understood in *Kawaauhau*, from claims for breach of contract or conversion, neither of which "necessarily involves an intentional injury." *Id*.

More recently, this court held that a debt for sanctions imposed because of the debtors' litigation tactics arose from willful and malicious injury under § 523(a)(6). *In re Keaty*, 397 F.3d 264 (5th Cir. 2005). The debtors' intended injury was "harassment" through baseless litigation, but their actions were "substantially certain to . . . cause . . . financial injury." *Id*. at 274. The relationship between the debtor's motivation and the injury in this case is slightly different from that in *Keaty*: Shcolnik allegedly engaged in a course of

6

No. 10-20800

contumacious conduct that required the Appellants to file meritorious litigation against him, resulting in the instant fee award; whereas in *Keaty*, the debtors pursued the burdensome suit that provoked a sanctions award against them. This is a distinction without a difference, however. It would make no sense for the infliction of expense in litigating a meritless legal claim to constitute willful and malicious injury to the creditor, as in *Keaty*, while denying the same treatment here to the infliction of expense by a debtor's attempt to leverage an equally baseless claim through a campaign of coercion. That Texas law may allow the arbitrator to assess attorneys' fees in favor of a party without specifically finding a willful and malicious injury is not conclusive.[4] If the facts are as Appellants allege, Shcolnik either had the motive to inflict harm or acted so as to create "an objective substantial certainty of harm" to the Appellants. *Id.*

Viewed in light of our precedents, there is a genuine, material fact issue for trial. Shcolnik's behavior resulted in willful and malicious injury if his claims of ownership were made in bad faith as a pretense to extract money from the Appellants. *See Keaty*, 397 F.3d at 273 (willful and malicious injury to intentionally "pursu[e] meritless litigation for the purpose of harassment[.]"). The litigation costs he forced upon them are different from the million dollar claim he made against them, but they were neither attenuated nor unforeseeable from his alleged intentionally injurious conduct.

---

[4] The arbitrator awarded the $50,000 in attorneys' fees which it found to be "reasonable and necessary and appropriate pursuant to TEX. CIV. PROC. & REM. CODE ANN. § 37.001, et seq." Section 37.009 provides for "costs and reasonable and necessary attorney's fees as are equitable and just." While the arbitrator made no specific finding of the wrongfulness of Shcolnik's behavior, or of whether his claims of ownership were made in bad faith, this is not dispositive evidence that his claims were made in good faith. Such findings were not required for an award of attorneys' fees under § 37.009. We note that the arbitrator *did* specifically find, however, that Shcolnik had never been part owner of either Appellant under any of the theories he pled.

No.  10-20800

## CONCLUSION

For the foregoing reasons, we reverse and remand this case for trial on the merits under 11 U.S.C. § 523(a)(6).

**REVERSED and REMANDED.**

No.  10-20800

HAYNES, Circuit Judge, concurring and dissenting:

I respectfully dissent from the decision to reverse and remand.[5]  The effect of the majority opinion is to transform all litigation precipitated by aggressive demand letters into potential "malicious" acts for purposes of non-dischargeability.  Additionally, the effect of the majority opinion is to allow an end-run around an arbitration proceeding in which both parties willingly participated.  Finally, the majority opinion glosses over the lack of connection between the allegedly malicious acts and the arbitration award of attorneys' fees now sought to be rendered non-dischargeable.  Because the bankruptcy and district courts reached the correct result under our existing precedents, I would affirm.

Non-dischargeability is the exception, not the rule.  Exceptions to the "fresh start" for debtors are narrowly construed, with doubts resolved in favor of the debtors.  *See Gleason v. Thaw*, 236 U.S. 558, 562 (1915) ("In view of the well-known purposes of the bankrupt[cy] law, exceptions to the operation of a discharge thereunder should be confined to those plainly expressed[.]"); *State v. Soileau* (*In re Soileau*), 488 F.3d 302, 311 (5th Cir. 2007); *Tex. Lottery Comm'n v. Tran* (*In re Tran*), 151 F.3d 339, 342 (5th Cir. 1998); *Hudson v. Raggio & Raggio, Inc.* (*In re Hudson*), 107 F.3d 355, 356 (5th Cir. 1997) ("[E]xceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." (citation omitted)); *Citizens Bank & Trust Co. v. Case* (*In re Case*), 937 F.2d 1014, 1024 (5th Cir. 1991) ("Any exception to the general discharge of a debtor's debts is

---

[5] I agree with the majority opinion's analysis of the § 523(a)(4) argument and thus concur in Section A.  I dissent from the holding of the majority opinion and the underlying reasoning in Section B with respect to § 523(a)(6).

No.  10-20800

strictly governed by the Code and construed narrowly in favor of the debtor and against the creditor requesting the determination." (citation omitted)).

Debtors often come to bankruptcy with judgments against them.  It is certainly not an unusual occurrence for parties to make claims in litigation or arbitration that do not carry the day.  Nonetheless, the majority opinion transforms the ordinary litigation loser into one who has caused "willful and malicious injury" to another.  It does so, apparently, because of the colorful language used by Shcolnik, without the assistance of legal counsel, in his e-mailed demand letters that preceded litigation which in turn was followed by the arbitration proceeding in question.  So, I start there.

No doubt the e-mail letters Shcolnik wrote are insulting and demeaning.[6] I would not write such a document nor countenance another to do so.  However, we are not here to teach a course in professionalism or civility.  The majority opinion transforms incivility into "a campaign of coercion" or "contumacious conduct" by *ipse dixit*.  The question arises – were these "nasty demand letters," in fact, "coercive" or "contumacious?"  We do not have a case setting out a test for where the quintessential demand letter ends and the parade of horribles suggested by the majority opinion begins.  Wherever that line is, it is not crossed here, and I disagree with transforming the regrettable unpleasantness and aggressiveness that often attend the prelude to litigation into "coercive" or "contumacious" conduct so easily.  Shcolnick's e-mail letters, however reprehensible they undeniably are, do not constitute either.

In addition, I am concerned that the majority opinion fails to recognize the strong federal policy favoring arbitration.  *See Pers. Sec. & Safety Sys. Inc. v.*

---

[6] For a bit of context, it is worth noting that there is plenty of nastiness to go around in this case.  For example, during the course of Shcolnik's bankruptcy proceeding, Shcolnik had to obtain the return of the engagement ring he had given to his fiancée.  When the engagement ring was put up for sale by the bankruptcy trustee, Appellant Capstone outbid a jeweler to buy the engagement ring.

No. 10-20800

*Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (citation omitted). The arbitrator did not award attorneys' fees for wrongdoing, malice, bad faith, or even "prevailing party" status, but simply as "equitable and just." Indeed, the arbitrator did not even award all the fees Appellants sought – shaving $20,000 off of the $70,000 they requested. The Texas Uniform Declaratory Judgments Act, TEX. CIV. PRAC. & REM. CODE § 37.001 *et seq.*, sets a very low threshold for attorneys' fees awards. Prevailing party status is not required, and the matter is left to the discretion of the court (here, the arbitrator). *Id.* § 37.009; *Boerschig v. Sw. Holdings, Inc.*, 322 S.W.3d 752, 767-68 (Tex. App.—El Paso 2010, no pet.) ("[T]he award is not dependent on a finding that a party prevailed in the action." (citations omitted)); *McCarthy Bros. v. Cont'l Lloyds Ins. Co.*, 7 S.W.3d 725, 731 (Tex. App.—Austin 1999, no pet.).

This distinction is key when we consider the prior precedents of this court. *Raspanti v. Keaty* (*In re Keaty*), 397 F.3d 264 (5th Cir. 2005), upon which the majority opinion rests, did not involve a garden-variety award of attorneys' fees. Instead, it involved sanctions against attorneys. In *Keaty*, the state appellate court assessed sanctions, making particular findings that "the Keatys knew their claims had prescribed, that their answers to Raspanti's request for admissions were disingenuous, and that the proceedings by the Keatys were knowingly without foundation, crafted for the purposes of harassment, and designed to prolong the proceedings deliberately and needlessly." *Id.* at 268 (citing *Keaty v. Raspanti*, 781 So. 2d 607, 612 (La. Ct. App. 2001)). Accordingly, the state appellate court found the Keatys' conduct sanctionable under Louisiana law governing the effect of signing pleadings for an improper purpose. *Id.*

Thus, in *Keaty* we gave effect to the state court ruling rather than turning it into something it was not.[7] That distinction makes a difference. If we do not

---

[7] In *Keaty*, Raspanti brought an adversary proceeding against the Keatys in bankruptcy court seeking a determination that the state court sanctions award against the Keatys was not

11

care what the prior tribunal (in *Keaty*, the state court, here, the arbitrator) found or whether the attorneys' fees were caused by the alleged coercive or contumacious act, then we greatly broaden § 523(a)(6), contrary to congressional intent that bankruptcy be a "fresh start." *See Local Loan Co. v. Hunt*, 292 U.S. 234, 244-45 (1934) ("One of the primary purposes of the Bankruptcy Act is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes. . . . The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act." (internal quotation marks and citations omitted)).

The arbitration proceeding giving rise to the attorneys' fees award was limited to the resolution of issues surrounding the ownership/partnership dispute. The arbitrator had before him all of the good, bad, and ugly of this ill-fated business relationship. He ruled. He did not find coercion, contempt, fraud, or any other of the allegedly bad acts. He found in a simple business dispute that the Appellants should win and Shcolnik should lose. "All other relief of the parties [was] denied." Furthermore, although the arbitrator found for Appellants on the ownership claims, he referenced the fact that they had held Shcolnik out as a partner (calling those events "excusable mistakes"). Thus, far

---

dischargeable under § 523(a)(6). *Id.* Although the state court had made findings on the issue of whether the debt arose from a willful and malicious injury as required under § 523(a)(6), the bankruptcy court refused to give preclusive effect to the state court's findings, on the grounds that the issue had not been "actually litigated" with an evidentiary hearing regarding the Keatys' conduct at the state court level. *Id.* at 268-69. We found that the findings made by the state court had preclusive effect on the § 523(a)(6) issue of non-dischargeability of the debt from the sanctions award because, *inter alia*, (1) the state court had made clear and specific findings that the Keatys had acted willfully and maliciously to injure the creditor, (2) the Keatys' "motive in filing the frivolous claim for attorney's fees was to injure Raspanti (by harassing him)," and (3) the Keatys' "actions were substantially certain to injure Raspanti, since deliberately and needlessly prolonging the proceedings would necessarily cause Raspanti financial injury." *Id.* at 273-74. Thus, in finding the sanctions award non-dischargeable, we gave effect to the state court's ruling. *Id.* at 273.

No. 10-20800

from finding that Shcolnik's claims were malicious, the arbitrator's findings show that the claims had some basis. That Shcolnik ultimately lost on his ownership claims (even if he did not have the best of intentions in making those claims) is not tantamount to "willful" or "malicious" injury unless all losing litigation is "willful" or "malicious" injury. Certainly Congress could easily make non-dischargeable attorneys' fees awarded in litigation or arbitration, but the fact that it has not done so speaks volumes.

Indeed, even if the e-mail letters were "coercive" or "contumacious" and even if we ignore the lack of arbitration findings to support the majority opinion, the undisputed facts show that any burden imposed on Appellants by the e-mail letters was quickly removed – the purportedly wrongful documents were sent on May 25 and 27, 2005. On May 27, 2005, the state district court granted a temporary restraining order that was later extended and continued by agreement throughout the litigation and arbitration, barring Shcolnik from taking the actions Appellants claimed put them in immediate fear. It was not until six months later that the matter was referred to the arbitration at issue here, breaking any purported causal connection between the claimed wrongful behavior and the fee award here at issue.

Moreover, the lack of causal connection is precisely why the arbitrator made no specific finding of wrongfulness. Indeed, either the allegedly wrongful acts caused the arbitration of the ownership/partnership dispute, in which case, the arbitrator's lack of a specific finding to that effect (and findings inconsistent with that) is meaningful, or they did not, in which case, the alleged "campaign of coercion" or "contumacious conduct" did not cause the attorneys' fees award.

The majority opinion concludes that "Shcolnik's behavior resulted in willful and malicious injury if his claims of ownership were made in bad faith as a pretense to extract money from the Appellants." Maj. Op. at 7. The opinion rests on a misconstruction of *Keaty*. Moreover, it is undeniable that the majority

13

opinion's conclusion is not supported by the record, the arbitrator's decision, or, indeed, the events that actually transpired below.  As we gave effect to the sanctions in *Keaty*, we should give effect to the arbitrator's ruling here.  The attorneys' fees awarded as equitable and just in the arbitration were for resolution of the ownership/partnership dispute, not for anything else.

Given the foregoing and in light of the narrowness of exceptions to discharge, we should not reach out to transform an arbitration award of attorneys' fees for the resolution of a mere business dispute into a non-dischargeable debt for willful and malicious injury (or remand for the bankruptcy court to do so).  Applying our existing precedents, I would affirm. Because the majority opinion extends our precedents too far, I respectfully dissent.