HAYNES, Circuit Judge,
concurring and dissenting:
I respectfully dissent from the decision to reverse and remand.[1] The effect of the majority opinion is to transform all litigation precipitated by aggressive demand letters into potential “malicious” acts for purposes of non-dischargeability. Additionally, the effect of the majority opinion is to allow an end-run around an arbitration proceeding in which both parties willingly participated. Finally, the majority opinion glosses over the lack of connection between the allegedly malicious acts and the arbitration award of attorneys’ fees now sought to be rendered non-discharge-able. Because the bankruptcy and district courts reached the correct result under our existing precedents, I would affirm.
Non-dischargeability is the exception, not the rule. Exceptions to the “fresh start” for debtors are narrowly construed, with doubts resolved in favor of the debtors. See Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915) (“In view of the well-known purposes of the bankruptcy] law, exceptions to the operation of a discharge thereunder should be confined to those plainly expressed[.]”); State v. Soileau (In re Soileau), 488 F.3d 302, 311 (5th Cir.2007); Tex. Lottery Comm’n v. Tran (In re Tran), 151 F.3d 339, 342 (5th Cir.1998); Hudson v. Raggio & Raggio, Inc. (In re Hudson), 107 F.3d 355, 356 (5th Cir.1997) (“[E]xceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start.” (citation omitted)); Citizens Bank & Trust Co. v. Case (In re Case), 937 F.2d 1014, 1024 (5th Cir.1991) (“Any exception to the general discharge of a debtor’s debts is strictly governed by the Code and construed narrowly in favor of the debtor and against the creditor requesting the determination.” (citation omitted)).
Debtors often come to bankruptcy with judgments against them. It is certainly not an unusual occurrence for parties to make claims in litigation or arbitration that do not carry the day. Nonetheless, the majority opinion transforms the ordinary litigation loser into one who has *631 caused “willful and malicious injury” to another. It does so, apparently, because of the colorful language used by Shcolnik, without the assistance of legal counsel, in his e-mailed demand letters that preceded litigation which in turn was followed by the arbitration proceeding in question. So, I start there.
No doubt the e-mail letters Shcolnik wrote are insulting and demeaning.[2] I would not write such a document nor countenance another to do so. However, we are not here to teach a course in professionalism or civility. The majority opinion transforms incivility into “a campaign of coercion” or “contumacious conduct” by ipse dixit. The question arises — were these “nasty demand letters,” in fact, “coercive” or “contumacious?” We do not have a case setting out a test for where the quintessential demand letter ends and the parade of horribles suggested by the majority opinion begins. Wherever that line is, it is not crossed here, and I disagree with transforming the regrettable unpleasantness and aggressiveness that often attend the prelude to litigation into “coercive” or “contumacious” conduct so easily. Shcolnik’s e-mail letters, however reprehensible they undeniably are, do not constitute either.
In addition, I am concerned that the majority opinion fails to recognize the strong federal policy favoring arbitration. See Pers. Sec. & Safety Sys. Inc. v. Motorola Inc., 297 F.3d 388, 392 (5th Cir.2002) (citation omitted). The arbitrator did not award attorneys’ fees for wrongdoing, malice, bad faith, or even “prevailing party” status, but simply as “equitable and just.” Indeed, the arbitrator did not even award all the fees Appellants sought — shaving $20,000 off of the $70,000 they requested. The Texas Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem.Code § 37.001 et seg., sets a very low threshold for attorneys’ fees awards. Prevailing party status is not required, and the matter is left to the discretion of the court (here, the arbitrator). Id. § 37.009; Boerschig v. Sw. Holdings, Inc., 322 S.W.3d 752, 767-68 (Tex.App.—El Paso 2010, no pet.) (“[T]he award is not dependent on a finding that a party prevailed in the action.” (citations omitted)); McCarthy Bros, v. Cont’l Lloyds Ins. Co., 7 S.W.3d 725, 731 (Tex.App.—Austin 1999, no pet.).
This distinction is key when we consider the prior precedents of this court. Raspanti v. Keaty (In re Keaty), 397 F.3d 264 (5th Cir.2005), upon which the majority opinion rests, did not involve a garden-variety award of attorneys’ fees. Instead, it involved sanctions against attorneys. In Keaty, the state appellate court assessed sanctions, making particular findings that “the Keatys knew their claims had prescribed, that their answers to Raspanti’s request for admissions were disingenuous, and that the proceedings by the Keatys were knowingly without foundation, crafted for the purposes of harassment, and designed to prolong the proceedings deliberately and needlessly.” Id. at 268 (citing Keaty v. Raspanti, 781 So.2d 607, 612 (La.Ct.App.2001)). Accordingly, the state appellate court found the Keatys’ conduct sanctionable under Louisiana law governing the effect of signing pleadings for an improper purpose. Id.
Thus, in Keaty we gave effect to the state court ruling rather than turning it *632 into something it was not.[3] That distinction makes a difference. If we do not care what the prior tribunal (in Keaty, the state court, here, the arbitrator) found or whether the attorneys’ fees were caused by the alleged coercive or contumacious act, then we greatly broaden § 523(a)(6), contrary to congressional intent that bankruptcy be a “fresh start.” See Local Loan Co. v. Hunt, 292 U.S. 234, 244-45, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (“One of the primary purposes of the Bankruptcy Act is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes .... The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act.” (internal quotation marks and citations omitted)).
The arbitration proceeding giving rise to the attorneys’ fees award was limited to the resolution of issues surrounding the ownership/partnership dispute. The arbitrator had before him all of the good, bad, and ugly of this ill-fated business relationship. He ruled. He did not find coercion, contempt, fraud, or any other of the allegedly bad acts. He found in a simple business dispute that the Appellants should win and Shcolnik should lose. “All other relief of the parties [was] denied.” Furthermore, although the arbitrator found for Appellants on the ownership claims, he referenced the fact that they had held Shcolnik out as a partner (calling those events “excusable mistakes”). Thus, far from finding that Shcolnik’s claims were malicious, the arbitrator’s findings show that the claims had some basis. That Shcolnik ultimately lost on his ownership claims (even if he did not have the best of intentions in making those claims) is not tantamount to “willful” or “malicious” injury unless all losing litigation is “willful” or “malicious” injury. Certainly Congress could easily make non-dischargeable attorneys’ fees awarded in litigation or arbitration, but the fact that it has not done so speaks volumes.
Indeed, even if the e-mail letters were “coercive” or “contumacious” and even if we ignore the lack of arbitration findings to support the majority opinion, the undisputed facts show that any burden imposed on Appellants by the e-mail letters was quickly removed — the purportedly wrongful documents were sent on May 25 and 27, 2005. On May 27, 2005, the state district court granted a temporary restraining order that was later extended and continued by agreement throughout *633 the litigation and arbitration, barring Shcolnik from taking the actions Appellants claimed put them in immediate fear. It was not until six months later that the matter was referred to the arbitration at issue here, breaking any purported causal connection between the claimed wrongful behavior and the fee award here at issue.
Moreover, the lack of causal connection is precisely why the arbitrator made no specific finding of wrongfulness. Indeed, either the allegedly wrongful acts caused the arbitration of the ownership/partnership dispute, in which case, the arbitrator’s lack of a specific finding to that effect (and findings inconsistent with that) is meaningful, or they did not, in which case, the alleged “campaign of coercion” or “contumacious conduct” did not cause the attorneys’ fees award.
The majority opinion concludes that “Shcolnik’s behavior resulted in willful and malicious injury if his claims of ownership were made in bad faith as a pretense to extract money from the Appellants.” Maj. Op. at 630. The opinion rests on a misconstruction of Keaty. Moreover, it is undeniable that the majority opinion’s conclusion is not supported by the record, the arbitrator’s decision, or, indeed, the events that actually transpired below. As we gave effect to the sanctions in Keaty, we should give effect to the arbitrator’s ruling here. The attorneys’ fees awarded as equitable and just in the arbitration were for resolution of the ownership/partnership dispute, not for anything else.
Given the foregoing and in light of the narrowness of exceptions to discharge, we should not reach out to transform an arbitration award of attorneys’ fees for the resolution of a mere business dispute into a non-dischargeable debt for willful and malicious injury (or remand for the bankruptcy court to do so). Applying our existing precedents, I would affirm. Because the majority opinion extends our precedents too far, I respectfully dissent.

. I agree with the majority opinion’s analysis of the § 523(a)(4) argument and thus concur in Section A. I dissent from the holding of the majority opinion and the underlying reasoning in Section B with respect to § 523(a)(6).

. For a bit of context, it is worth noting that there is plenty of nastiness to go around in this case. For example, during the course of Shcolnik’s bankruptcy proceeding, Shcolnik had to obtain the return of the engagement ring he had given to his fiancee. When the engagement ring was put up for sale by the bankruptcy trustee, Appellant Capstone outbid a jeweler to buy the engagement ring.

. In Keaty, Raspanti brought an adversary proceeding against the Keatys in bankruptcy court seeking a determination that the state court sanctions award against the Keatys was not dischargeable under § 523(a)(6). Id. Although the state court had made findings on the issue of whether the debt arose from a willful and malicious injury as required under § 523(a)(6), the bankruptcy court refused to give preclusive effect to the state court's findings, on the grounds that the issue had not been “actually litigated” with an evidentiary hearing regarding the Keatys’ conduct at the state court level. Id. at 268-69. We found that the findings made by the state court had preclusive effect on the § 523(a)(6) issue of non-dischargeability of the debt from the sanctions award because, inter alia, (1) the state court had made clear and specific findings that the Keatys had acted willfully and maliciously to injure the creditor, (2) the Keatys' "motive in filing the frivolous claim for attorney's fees was to injure Raspanti (by harassing him),” and (3) the Keatys’ “actions were substantially certain to injure Raspanti, since deliberately and needlessly prolonging the proceedings would necessarily cause Raspanti financial injury.” Id. at 273-74. Thus, in finding the sanctions award non-discharge-able, we gave effect to the state court’s ruling. Id. at 273.